[No. 53397–1.   En Banc.   April 7, 1988.]

*In the Matter of the Personal Restraint of*
PATRICK JAMES JEFFRIES, *Petitioner.*

*Brian Reed Phillips,* for petitioner.

*David H. Bruneau, Prosecuting Attorney,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

*State v. Jeffries,* 105 Wn.2d 398, 717 P.2d 722, *cert. denied,* 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986), was this, petitioner's direct appeal of his murder conviction. There we affirmed his conviction and death sentence. Then, we subsequently denied his first personal

restraint petition without opinion.[1] In this, petitioner's second personal restraint petition, he raises yet additional matters and it is these which we address by this opinion.

The particulars of the murders committed by the petitioner are dealt with in our opinion on the direct appeal. The chronicle of events underlying this case commenced on January 15, 1983. It was then that the victims, a retired couple residing in Clallam County, opened their home to Patrick James Jeffries who had recently been released from a Canadian penal institution. They allowed Mr. Jeffries, the petitioner herein, to sculpt wood in their woodworking shop while he stayed with them. A little over 2 months later, the bodies of the victims were found buried in shallow graves near their home. They had been shot with .22 caliber bullets—the husband 7 times and the wife 10. At trial, a jury convicted the petitioner of two counts of aggravated murder in the first degree and he was sentenced to death.

The jury based the conviction on the following two statutory aggravating circumstances:

> (7) The person committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime;
> (8) There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the person;

RCW 10.95.020 (part). The trial court instructed the jury on both of these aggravating circumstances and informed the jury that it could convict on either theory, so long as the verdict was unanimous. By special and general verdicts, the jury found petitioner guilty on both counts charged and under both aggravating circumstances.

At the penalty phase of the trial, the State's case in chief consisted of an opening statement and a motion to incorporate all of the evidence from the guilt phase of the trial. The trial court granted the motion. By a motion in limine, defense counsel was successful in keeping petitioner's

---

[1]*State v. Jeffries*, 722 P.2d 99 (1986).

extensive criminal record out of evidence. His motion for a directed verdict, however, was denied.

After opening statements had been made in the penalty phase of the case, defense counsel called the petitioner's brother to testify as a witness. The brother identified several wood carvings petitioner had made. Defense counsel informed the court that several other potential defense witnesses were available, but that the petitioner did not want them to testify. As counsel explained:

> To my client's steadfast belief that he's completely opposed to defense counsel offering any information by way of mitigation that goes towards, in his words, begging for leniency or mercy, these people were prepared to say things based on their knowledge and perceptions of the Defendant, however, as his counsel, we are willing to abide by his desires.

Thereupon the trial court itself engaged the petitioner in colloquy on the subject:

> THE COURT: Although I don't know exactly what the testimony may have been, Mr. Jeffries, perhaps you do and you have discussed this with your counsel.
>
> [DEFENDANT:] No, it's just the way I feel about the case. I still sta*te* that I am innocent and I believe it and I have no reason to even ask God's forgiveness because I have done nothing and I certainly don't see any reason to beg the jury or anybody else because I am innocent and that is how I stand and therefore I don't want to put my loved ones, like my relatives and friends, bring them up here and put them through this when I believe strongly that there is no valid reason to do so. I will stand on the case and I have instructed counsel to do so.
>
> THE COURT: *You understand that these people could testify if you want them to?*
>
> [DEFENDANT:] *Yes, and it's my wish that they do not.*
>
> THE COURT: And you have had ample time to consider that?
>
> [DEFENDANT:] Yes, I have. Since Saturday.
>
> THE COURT: You have talked to your two counsel about that?
>
> [DEFENDANT:] A couple of times.

(Italics ours.)

Before the closing arguments of counsel at this phase of the case, the petitioner exercised his right of allocution under former CrR 7.1.[2] He utilized the occasion to tell the jury that the murder victims were his friends and that he did not kill them.

Then, during closing arguments at the penalty phase of the case, the prosecuting attorney made passing reference to post–sentencing procedures, including mention of the fact that the petitioner "will get appeals". By its special verdict at the close of that part of the case, the jury found that there were not sufficient mitigating circumstances to merit leniency. The trial court in due course sentenced the petitioner to pay the supreme penalty for his crimes.

Three principal issues are raised by this petition. In considering such issues, of course, we keep in mind that the central issue in a personal restraint proceeding alleging constitutional errors is whether the petitioner has shown that the alleged errors worked to the petitioner's actual and substantial prejudice.[3]

## ISSUES

ISSUE ONE. Did trial defense counsel fail to provide effective assistance of counsel by acceding to the petitioner's request not to present mitigating evidence at the penalty phase of the case?

ISSUE TWO. Did the trial court's instructions, and verdict forms used, permit the jury to reach a verdict in violation of the law's requirement that the verdict in a criminal case be unanimous?

ISSUE THREE. Did the prosecuting attorney commit prejudicial misconduct when, in closing argument, he referred to the defendant's right to appeal?

---

[2]*See State v. Mak*, 105 Wn.2d 692, 728–29, 718 P.2d 407, *cert. denied*, 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986).

[3]*In re Mercer*, 108 Wn.2d 714, 718–21, 741 P.2d 559 (1987); *In re Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982).

## Decision

Issue One.

Conclusion. Petitioner was not denied effective assistance of counsel. Trial defense counsel very clearly exercised reasonable professional judgment in deciding what evidence to present.

█ In determining whether a criminal defendant has been denied effective assistance of counsel, we will consider the entire record, and then ask whether "it can be said that the accused was afforded *effective representation* and a *fair* and *impartial* trial."[4] To establish ineffective assistance of counsel, two independent showings must be made: first, that counsel's performance was deficient, and second, that the deficiency prejudiced the defense.[5] This 2–part test applies to both the penalty and guilt phases of the trial.[6]

In this case, defense counsel located four witnesses who were willing and able to testify on behalf of the petitioner at the penalty phase of the trial. The witnesses were his brother, two nieces, and his Canadian parole officer. The petitioner, however, was flatly opposed to their providing any testimony, the only exception being that he would allow his brother to provide a testimonial foundation for admitting the petitioner's wood carvings into evidence. After discussion with the petitioner, defense counsel agreed to abide by his wishes and informed the court of their decision. As set forth above, the trial court closely questioned petitioner personally on the matter to ensure that this was the course he wanted to follow. Petitioner now claims he was denied effective assistance of counsel because defense counsel failed to present any mitigating evidence.

---

[4]*Mak,* at 731; *State v. Bradbury,* 38 Wn. App. 367, 371–73, 685 P.2d 623 (1984).

[5]*Mak,* at 731.

[6]*Strickland v. Washington,* 466 U.S. 668, 686–87, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *See Mak,* at 731–33.

The United States Supreme Court recently considered a similar claim and held that because defense counsel's decision not to develop and present any mitigating evidence at a capital sentencing proceeding was supported by his "reasonable professional judgment", the defendant was not denied effective assistance of counsel. *Burger v. Kemp,* ___ U.S. ___, 97 L. Ed. 2d 638, 657–58, 107 S. Ct. 3114 (1987). Relying on the guidelines contained in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the Court found no deficiency leading to a breakdown in the adversarial process.[7] In *Burger,* defense counsel chose not to call as witnesses the defendant's mother, an attorney who had befriended the defendant and a psychologist. They would have testified to the defendant's "exceptionally unhappy and unstable childhood."[8]

Similarly, the evidence which was not presented in this case would have described the petitioner's childhood, work experience and contributions to art. Defense counsel's stated reason for failing to put the witnesses on the stand was to follow the petitioner's own wishes in the matter. It is also clear to us, however, that if the witnesses had testified, petitioner's extensive prior record of criminal convictions may well have been put before the jury in rebuttal, particularly had his parole officer testified. Almost certainly this real possibility entered into defense counsel's decision. As it was, defense counsel was successful in keeping petitioner's extensive criminal record out of evidence.

██ Even had defense counsel based his decision not to call the witnesses solely on petitioner's request, abiding by that request would not imply that reasonable professional judgment was absent. Obviously, defense counsel's judgment may include the wishes of a defendant.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own

---

[7]*Burger v. Kemp,* ___ U.S. ___, 97 L. Ed. 2d 638, 658, 107 S. Ct. 3114 (1987).

[8]*Burger,* 97 L. Ed. 2d at 654.

statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.

*Strickland,* 466 U.S. at 691, quoted in *Burger,* 97 L. Ed. 2d at 657–58.[9]

Petitioner, however, cites the American Bar Association's Standards for Criminal Justice as support for his argument that trial defense counsel's conduct was professionally unreasonable:

> (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:
> (i) what plea to enter;
> (ii) whether to waive jury trial; and
> (iii) whether to testify in his or her own behalf.
> (b) The decisions on what witnesses to call, whether and how to conduct cross–examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.

1 American Bar Ass'n, *Standards for Criminal Justice,* Std. 4–5.2 (part) (2d ed. 1980). While these advisory standards are helpful, they are not a constitutional checklist by which the effectiveness of counsel must be measured in any particular case.[10] We do not disagree with petitioner's argument that the decision of whether or not to call a witness is normally a tactical decision to be made by counsel. We do, however, decline to adopt a rule that would suggest that taking nontactical considerations into account, such as a client's clearly expressed wishes, automatically renders counsel's decision constitutionally infirm. Any such rule would not only be illogical, but would fly in the face of

---

[9]*See also Tafero v. Wainwright,* 796 F.2d 1314, 1320 (11th Cir. 1986), *cert. denied,* ___ U.S. ___, 97 L. Ed. 2d 782, 107 S. Ct. 3277 (1987); *Foster v. Dugger,* 823 F.2d 402, 407 n.16 (11th Cir.), *petition for cert. filed* (Dec. 2, 1987).

[10]*See Strickland,* at 688.

our prior recognition of the constitutional right of criminal defendants "to at least broadly control" their own defenses.[11]

The record in the case before us conclusively establishes that petitioner's decision not to allow the uncalled witnesses to testify on his behalf at the penalty phase of the trial was made knowingly, voluntarily, and intelligently. Not only did he consult with counsel, speak to his brother about the matter and consider his options for some 2 days, but he was also closely questioned by the trial court to ensure that he knew exactly what he was doing. He chose to pursue a strategy emphasizing innocence and thus, perhaps, to introduce some doubts into the jurors' minds as they considered the life or death alternatives. Both petitioner and defense counsel argued that the defendant was innocent.

In view of the foregoing, it certainly cannot reasonably be said that defense counsel did not exercise reasonable professional judgment; he obviously did just that.

█ Nor do we decide this issue on a strictly "tactical" or "waiver" basis. Keeping in mind the presumption of adequate assistance,[12] we seek only to determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[13] On the record presented in this case, we find ample adversarial testing to satisfy us that petitioner did receive a fair and impartial trial at the penalty phase of the case.

Petitioner argues, however, that defense counsel in a death penalty case has a special obligation to society to

---

[11]*State v. Jones,* 99 Wn.2d 735, 740, 664 P.2d 1216 (1983), citing *Faretta v. California,* 422 U.S. 806, 817, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Fritz,* 21 Wn. App. 354, 585 P.2d 173, 98 A.L.R.3d 1 (1978).

[12]*Strickland,* at 689.

[13]*Strickland,* at 686.

ensure that the sentence is individualized and reliable.[14] According to petitioner's reasoning, by failing to present the above mentioned witnesses' testimony as mitigating evidence, defense counsel failed to apprise the jury of petitioner's particularized characteristics. In this connection, petitioner relies on *People v. Deere,* 41 Cal. 3d 353, 710 P.2d 925, 222 Cal. Rptr. 13 (1985), wherein a death sentence was set aside by the California Supreme Court because defense counsel failed to present any mitigating evidence at the penalty phase. There, the defendant wanted to die and instructed defense counsel not to resist a death sentence.[15] In that case, the court declined to allow the defendant to "compel the people of the State of California to use their resources to take his life".[16] The court in *Deere* also emphasized the need to develop a complete record for purposes of the mandated appellate review.[17]

*Deere* is not compelling, particularly in light of the United States Supreme Court's more recent pronouncements in *Burger v. Kemp, supra.* In any event, the facts of *Deere* are entirely distinguishable from those in this case.[18] The requirement of an individualized determination *was* satisfied in this case.

Not only has the petitioner failed to show that defense counsel's performance was deficient, he has also failed to show any prejudice. The test for prejudice is whether the petitioner has shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[14]*See Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976).

[15]*People v. Deere,* 41 Cal. 3d 353, 361, 710 P.2d 925, 222 Cal. Rptr. 13 (1985).

[16]*Deere,* at 362.

[17]*Deere,* at 363.

[18]Here, for example, the petitioner protested his innocence. He allowed his counsel to ask for mercy and leniency in closing arguments. He also put samples of his art into evidence of his wood carving talents. Arguably, these exhibits attested as eloquently to petitioner's worth as a human being as any of the uncalled character witnesses could have done.

would have been different."[19] Petitioner tries to avoid this requirement by arguing that the penalty phase was presumptively unreliable due to a failure of adversarial testing. The record simply does not support such an argument.

Petitioner was not denied effective assistance of counsel; his request for an evidentiary hearing on this issue is denied.

ISSUE TWO.

CONCLUSION. The trial court properly instructed the jury that it could consider alternative means of committing aggravated first degree murder. The verdict forms that were used adequately established jury unanimity.

In this state, defendants in criminal jury trials may only be convicted by unanimous verdict.[20] In *State v. Arndt,* 87 Wn.2d 374, 377–78, 553 P.2d 1328 (1976),[21] it was held that where a single criminal offense may be committed in more than one way, it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged, provided there is substantial evidence presented to support each of the means charged. In order to determine whether a statute describes multiple offenses or a single offense that may be committed by alternate means, we consider the following *Arndt* factors: "[1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction."[22] Once we determine that a single offense is described, we

---

[19]*Strickland,* at 694.

[20]*State v. Mak,* 105 Wn.2d 692, 735, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986).

[21]*Accord, State v. Franco,* 96 Wn.2d 816, 823, 639 P.2d 1320 (1982); *State v. Whitney,* 108 Wn.2d 506, 511, 739 P.2d 1150 (1987).

[22]*State v. Arndt,* 87 Wn.2d 374, 379, 553 P.2d 1328 (1976), quoting *State v. Kosanke,* 23 Wn.2d 211, 213, 160 P.2d 541 (1945). *See also Franco,* at 821; *Whitney,* at 510.

then consider whether sufficient evidence has been pre-
sented of each of the means offered for the jury's consider-
ation. The standard is "whether, after viewing the evidence
in the light most favorable to the prosecution, *any rational
trier of fact* could have found the essential elements of the
crime *beyond a reasonable doubt.*"[23] If sufficient evidence
supports each means, jury unanimity is required only as to
guilt.[24]

On petitioner's direct appeal in this case, applying this
test we concluded that "there was substantial evidence to
support the jury's findings and verdict that defendant
killed the victims in order to steal their property and to
prevent his identification as their killer."[25]

There is language in *State v. Green,* 94 Wn.2d 216, 616
P.2d 628 (1980) favoring a requirement of unanimity as to
means where the means are themselves separate crimes.[26]
That case, however, actually turned on insufficient evidence
of kidnapping to support an instruction allowing the jury to
consider whether the defendant caused the death of the
victim while raping or kidnapping her, or both. The general
verdict of guilt thus left unanimity on the underlying ele-
ment of kidnapping in doubt.[27] In *State v. Whitney,* 108

---

[23]*State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980), quoting *Jackson v.
Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

[24]*Arndt,* at 377; *Franco,* at 823; *Whitney,* at 511.

[25]*State v. Jeffries,* 105 Wn.2d 398, 407, 717 P.2d 722, *cert. denied,* 479 U.S.
922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). It should be further noted here that
our conclusion in that case was entirely consistent with the deference we "tradi-
tionally give to the jury or other trier of fact to resolve conflicts in testimony,
weigh evidence and draw reasonable inferences therefrom." *State v. Gerber,* 28
Wn. App. 214, 216, 622 P.2d 888 (1981). *See also State v. Mathe,* 35 Wn. App.
572, 581, 668 P.2d 599 (1983), *aff'd,* 102 Wn.2d 537, 688 P.2d 859 (1984); *State v.
Lawson,* 37 Wn. App. 539, 543, 681 P.2d 867 (1984).

[26]*Green,* at 233.

[27]*Green,* at 231–32.

Wn.2d 506, 511–12, 739 P.2d 1150 (1987), we rejected this dicta in *Green.*

In *Whitney,* the dissent argued that following *Arndt* fails to satisfy the due process requirement of *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) that the prosecution prove every fact necessary to constitute the crime charged beyond a reasonable doubt.[28] According to the *Whitney* dissent,

> Where the prosecutorial evidence required for proof of the alternative means is the same, a unanimous verdict that the defendant is guilty of the crime as charged is constitutionally sound. If, on the other hand, the means involve distinguishable elements, then the jury must unanimously agree on at least one set of elements that comprise a means of committing the offense, or the defendant has been deprived of his or her right to be convicted by a unanimous jury, and the court has no assurance that the prosecution has fulfilled its *Winship* requirement of proving each of the elements of the crime charged beyond a reasonable doubt.

*Whitney,* at 514 (Utter, J., dissenting). The *Winship* requirement, however, is already satisfied by our rule that "sufficient evidence" be presented of each means, as that phrase is interpreted in *Green* in light of *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Thus, unanimity on each set of elements is not mandated by *Winship.*

■ As noted above, two statutory aggravating circumstances were presented to the jury by the trial court's instructions in this case. We reiterate them for emphasis:

> (a) That the defendant committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime; or
> (b) There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant; . . .[29]

---

[28]*Whitney,* at 513 (Utter, J., dissenting); *see Franco,* at 830–35 (Utter, J., dissenting).

[29]Court's instructions 7, 8 (part); RCW 10.95.020(7), (8).

The trial court instructed the jury that each element of the crime of aggravated murder in the first degree must be proved beyond a reasonable doubt, and that if either of the aggravating circumstances was proved beyond a reasonable doubt, the jury had a duty to return a verdict of guilty. In the same "to convict" instructions, the trial court also instructed the jury that the aggravating circumstances were alternatives, that only one need be proved, and that the jury must unanimously agree whether either had been proved. As to both counts, the jury returned the following special verdict:[30]

> The defendant committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime.
>
> ANSWER: ___YES___
> (Yes or No)
>
> There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant.
>
> ANSWER: ___YES___
> (Yes or No)

It follows that under the trial court's instructions and verdict forms the jury not only had to unanimously agree by a general verdict as to petitioner's guilt,[31] but it also had to unanimously agree as to at least one of the alternative aggravating circumstances charged.

Petitioner appears to take the position that the jury was required to unanimously agree as to alternative ways to satisfy each of the alternative aggravating circumstances. His "means within means" argument raises the spectre of a myriad of instructions and verdict forms whenever a criminal statute contains several instances of use of the word "or". For example, the petitioner would now seem to want separate instructions and verdicts on (1) whether the murder was committed to conceal the commission of a crime;

---

[30]Special Verdict Form (part).

[31]Court's instructions 7, 8. Verdict Form A; Verdict Form C; Special Verdict Form.

(2) whether the murder was committed to protect the identity of any person committing a crime; (3) whether the murder was committed to conceal the identity of any person committing a crime; etc. Petitioner cites no authority for his position and we perceive no necessity for it. Further, petitioner did not except to the instructions given on the grounds now argued, as required in order to preserve any claimed error,[32] nor did he propose instructions on this theory.

The trial court properly instructed the jury on the alternative aggravating circumstances that could constitute aggravated murder in the first degree. The petitioner has shown no actual or substantial prejudice in this regard.

ISSUE THREE.

CONCLUSION. The isolated reference to "appeals" by the prosecuting attorney in the penalty phase rebuttal argument did not diminish sentencing reliability or otherwise violate the Eighth Amendment.

Disposition of this issue depends on how the United States Supreme Court opinion in *Caldwell v. Mississippi,* 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985) is interpreted and applied. *Caldwell,* like the present case, concerned remarks made by a prosecuting attorney during closing argument in the penalty phase of a capital proceeding. In *Caldwell,* the United States Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."[33] That did not occur here. To understand the differences between the present case and *Caldwell,* it is necessary to compare the actual arguments made in the two cases.

---

[32]*See Mak,* at 749.

[33]*Caldwell v. Mississippi,* 472 U.S. 320, 328–29, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985).

In *Caldwell*,[34] the prosecuting attorney argued as follows:

Ladies and gentlemen, I intend to be brief. I'm in complete disagreement with the approach the defense has taken. I don't think it's fair. I think it's unfair. I think the lawyers know better. Now, they would have you believe that you're going to kill this man and they know—they know that *your decision is not the final decision.* My God, how unfair can you be? Your job is reviewable. They know it.

(Italics ours.)

In the opinion of the United States Supreme Court, that argument shattered the assumption that the sentencers viewed their duty as an "awesome responsibility". Thus, both unreliability and bias in favor of death sentences were introduced into the case, in violation of the Eighth Amendment.[35] A plurality of the Supreme Court also found that the remarks were "wholly irrelevant to the determination of the appropriate sentence."[36] The Supreme Court concluded that "[b]ecause we cannot say that this effort had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires."[37]

Courts considering and construing *Caldwell* have set aside death sentences where similar arguments were made.[38] Other courts, however, have declined to set aside such sentences where, as here, the prosecuting attorney's argument did no more than refer to the process of appellate

---

[34]*Caldwell*, at 325.

[35]*Caldwell*, at 329–34.

[36]*Caldwell*, at 336.

[37]*Caldwell*, at 341.

[38]*Wheat v. Thigpen*, 793 F.2d 621, 628 (5th Cir.) (prosecutor outlined entire process of state and federal appellate and habeas review and told jury, "'[J]ust remember this, if your verdict is that of the death penalty, that's not final.'"), *reh'g denied*, 797 F.2d 977 (1986), *cert. denied*, 480 U.S. 930, 94 L. Ed. 2d 759, 107 S. Ct. 1566 (1987); *Hill v. Thigpen*, 667 F. Supp. 314, 323–24 (N.D. Miss. 1987) (jurors told that their word was "not the last word"); *State v. Clark*, 492 So. 2d

review.[39] The determinative consideration is whether the remarks of the prosecutor gave the jury an impression that

---

862, 870–71 (La. 1986) (not only was there a detailed outlining of the state appellate review process, but the prosecutor also informed jurors that the death sentence would not stand unless a majority of the state supreme court justices affirmed the sentence handed down by the jury); *Commonwealth v. Baker,* 511 Pa. 1, 21, 511 A.2d 777 (1986) (jurors told, "no matter what your decision is, . . . there will be considerable time and considerable appeals to be before any kind of finality occurs in this particular action".); *Frye v. Commonwealth,* 231 Va. 370, 345 S.E.2d 267 (1986) (jurors told that the "load" was not on their shoulders).

[39]*Berry v. Phelps,* 819 F.2d 511, 515 (5th Cir. 1987) (dicta) (prosecutor's brief remark about appellate review did not deny defendant a fundamentally fair sentencing determination); *Moore v. Blackburn,* 774 F.2d 97, 98 (5th Cir. 1985) (court's prior pronouncement that the prosecutor's remark (found in *Moore v. Maggio,* 740 F.2d 308, 320 (5th Cir. 1984), *cert. denied,* 472 U.S. 1032, 87 L. Ed. 2d 643, 105 S. Ct. 3514 (1985)), "From the next point forward it goes to the court system to be thoroughly reviewed and checked through every court in this land", did not diminish jury's sense of responsibility is consistent with the rule in *Caldwell*), *cert. denied,* 476 U.S. 1176, 90 L. Ed. 2d 990, 106 S. Ct. 2904 (1986); *Troedel v. Wainwright,* 667 F. Supp. 1456, 1467 (S.D. Fla. 1986) (prosecutorial remarks simply outlining the sentencing and review procedures in capital cases cannot, even if improper, have affected the guilt or sentencing decision; sentence vacated on other grounds), *aff'd sub nom. Troedel v. Dugger,* 828 F.2d 670 (11th Cir. 1987); *Bell v. Lynbaugh,* 663 F. Supp. 405, 420 (E.D. Tex.) (brief reference to appellate review did not diminish jury's sense of responsibility for its sentence sufficient to warrant reversal), *aff'd,* 828 F.2d 1085 (5th Cir.), *cert. denied,* ___ U.S. ___, 98 L. Ed. 2d 268, 108 S. Ct. 310 (1987); *Hopkinson v. Shillinger,* 645 F. Supp. 374, 405–07 (D. Wyo.) (viewed in context, prosecutor's remark that state supreme court would automatically review the case was not misleading or constitutionally improper), *reconsideration denied,* 648 F. Supp. 141 (D. Wyo. 1986); *Riley v. State,* 496 A.2d 997, 1023–26 (Del. 1985) (prosecutor's passing comment to jury that its decision would be automatically reviewed not reversible error under *Caldwell*), *cert. denied,* 478 U.S. 1022, 92 L. Ed. 2d 743, 106 S. Ct. 3339 (1986); *Guinan v. State,* 726 S.W.2d 754, 758–59 (Mo. Ct. App. 1986) (prosecutor's reference to appellate review of mistakes made by trial court and attorneys did not diminish jury's sense of responsibility), *cert. denied,* ___ U.S. ___, 98 L. Ed. 2d 161, 108 S. Ct. 210 (1987); *Mazzan v. State,* ___ Nev. ___, 733 P.2d 850, 851 (1987) ("Mere reference to the process of appellate review does not invalidate a death sentence."). *See also Dutton v. Brown,* 788 F.2d 669, 675 (10th Cir. 1986) (not constitutionally impermissible for prosecutor to underscore that the jury was part of the whole system of justice, within which it had a grave responsibility), *rev'd on other grounds on rehearing,* 812 F.2d 593 (10th Cir. 1987) (en banc), *cert. denied sub nom. Dutton v. Maynard,* ___ U.S. ___, 98 L. Ed. 2d 74, 108 S. Ct. 116 (1987) and *Maynard v. Dutton,* ___ U.S. ___, 98 L. Ed. 2d 149, 108 S. Ct. 197 (1987); *Campbell v. Kincheloe,* 829 F.2d 1453, 1457 (9th Cir. 1987) ("Mere improper argument does not necessarily violate a defendant's constitutional rights.").

the availability of appellate review lessens the jury's own sentencing responsibility.[40] In this case they clearly did not.

Here, the prosecuting attorney's rebuttal remarks in the penalty phase of the case were as follows:

> Ladies and gentlemen, [defense counsel], when he talks to you about what you're about to decide, he speaks in terms of killing. I think he asked you to, he asked you to say I will not kill him. Why does he do that? Why does he use the word kill. Because he's attempting to equate your decision making with what this defendant did. I mean, this defendant killed brutally and without mercy. If you decide that the death penalty is appropriate and, I submit it is, there is no comparison to the killing that he did and your decision that he should receive the death penalty. This man was arrested and was given due process of law. [The victims] didn't get due process of law. This man got a fair trial. He got two attorneys. He got resources, he got the benefit, everything that our system gives to a defendant, everything, and he got a fair trial and he will get more than that. *He will get appeals,* you name it, because that is our system and this system has treated him fairly. Something that he didn't do—he killed unmercifully, but our system gives him due process of law, so don't think that you're killing him because you're giving him law and you're giving him justice.

(Italics ours.)

■ Both here and in *Caldwell,* the prosecuting attorney's remarks were made to counter defense counsel's argument which equated the jury doing its sworn duty under the law with the defendant's murder of his victims by referring to both as "killings". In each case the prosecuting attorney in response thereto mentioned appellate review, but there any similarity ends. The prosecuting attorney in *Caldwell* argued, in effect, that someone other than the jurors would make the final decision on the appropriateness of a death sentence when he argued:

Your decision is *not* the final decision.

---

[40]*See State v. Clark,* 492 So. 2d 862 (La. 1986).

(Italics ours.) That is worlds away from the argument in this case where the prosecuting attorney merely mentioned:

He will get appeals . . .

Prosecutorial comments must be taken in context.[41] What the prosecuting attorney did in rebuttal argument in this case was only to contrast the wanton brutality of the murders, of which the petitioner had been convicted by this jury, with the full panoply of legal procedures afforded to the petitioner including the right to a full legal defense as guaranteed by law to all defendants in such cases.

It is the *effect* of the prosecutor's words that *Caldwell* deems crucial. The reference in this case to appellate review, though arguably irrelevant to the jury's penalty phase decision, did nothing to lead the jury to believe that its sentencing responsibility was lessened in any degree. In this day of well publicized serial appeals, petitions for rehearing and habeas corpus petitions in capital cases, it would be a naive jury indeed that was unaware that capital offenders will "get appeals".[42]

Furthermore, before the penalty phase arguments the trial court carefully informed the jury of its role. In particular, the court instructed the jury:[43]

> The question you are required to answer is as follows: "Having in mind the crime of which the defendant has been found guilty, are *you* convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?"
> *If you unanimously answer "yes", the sentence will be death.* If you do not unanimously answer "yes", or if you

---

[41]*United States v. Young,* 470 U.S. 1, 11–12, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985).

[42]*See State v. Berry,* 391 So. 2d 406, 418 (La. 1980), *cert. denied,* 451 U.S. 1010, 68 L. Ed. 2d 863, 101 S. Ct. 2347 (1981); *Caldwell v. Mississippi,* 472 U.S. 320, 351, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985) (Rehnquist, J., Burger, C.J., and White, J., dissenting).

[43]Court's instruction 3 (penalty phase (part)).

unanimously answer "no", the sentence will be life imprisonment without the possibility of parole.

(Italics ours.) The trial court also instructed the jury as follows:[44]

The death penalty means the person shall be executed by hanging by the neck until dead, or, at the election of the defendant, by administration of a lethal injection of sodium thiopental.

The jury is presumed to have followed these instructions.[45] They not only clearly and unequivocally informed the jurors that their "yes" vote on the special verdict form meant imposition of the death penalty, but went on to graphically describe exactly what the legal death penalty was. After receiving these instructions, the jurors could not believe but that the sentencing responsibility in this case rested anyplace except squarely on their shoulders. Accordingly, *Caldwell v. Mississippi,* 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985) is clearly distinguishable and we decline to set aside the death penalty.

We have also reviewed the other four issues which have been raised by the petitioner as grounds for relief in the petition before us.[46] Those issues concern the sufficiency of the evidence, guilt phase instructions, venue and the constitutionality of Washington's death penalty statute, all of which issues were decided on petitioner's direct appeal. Petitioner's arguments in this regard, in this his second personal restraint petition, have been considered but in our opinion remain unpersuasive. With respect thereto, we adhere to our decision on petitioner's earlier direct appeal.

---

[44]Court's instruction 6 (penalty phase (part)).

[45]*State v. Davenport,* 100 Wn.2d 757, 763, 675 P.2d 1213 (1984); *Tennant v. Roys,* 44 Wn. App. 305, 315, 722 P.2d 848 (1986).

[46]By an order entered herein on June 5, 1987, we ruled as follows concerning a fifth issue claimed in defendant's present petition: "The petition is denied as to petitioner's issue (5), regarding alleged juror misconduct, because that issue was raised in a prior petition and rejected. *In re Jeffries,* 722 P.2d 99 (1986)".

The petitioner herein has failed to show any actual or substantial prejudice justifying relief in his second personal restraint petition; accordingly it is denied.

BRACHTENBACH, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.

PEARSON, C.J. (dissenting)—I dissent from the portion of the majority's opinion which holds that the prosecutor's remarks regarding defendant's right to appeal are distinguishable from the prosecutor's remarks in *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985).

The critical portion of the prosecutor's comments in *Caldwell* was:

[Y]our decision is not the final decision. . . . [y]our job is reviewable.

*Caldwell*, at 325. In the present case the prosecutor told the jury:

He will get appeals, you name it . . . so don't think that you're killing him because you're giving him law . . .

The substance of the comments in practicality is indistinguishable. Basically, both prosecutors were introducing into the jurors' minds the idea that they can err because their error can be corrected by a "higher" authority. Such an argument is an invitation to abdicate responsibility. The *Caldwell* Court held that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere. *Caldwell*, at 328–29. As one commentator has noted:

The Court's decision in *Caldwell* is also supported by the decisions of most of the state courts that have addressed the issue of the propriety of references in a prosecutor's argument to appellate review. All of those courts have recognized that such references pose the danger of diminishing the jury's sense of its responsibility.

*Eighth Amendment—References to Appellate Review in Capital Sentencing Determinations,* 76 J. Crim. L. & Criminology 1051, 1061 (1985). *See, e.g., State v. Willie,* 410 So. 2d 1019, 1035 (La. 1982) (mention of appellate review "improperly diminishes the jury's duty and responsibility"), *cert. denied,* 465 U.S. 1051 (1984); *People v. Johnson,* 284 N.Y. 182, 185, 30 N.E.2d 465 (1940) (remarks made it "doubtful whether the jury could thereafter render a verdict with full appreciation of its responsibility").

Four members of the majority in *Caldwell* held that the availability of appellate review is a factor that is "wholly irrelevant" to the determination of the appropriate sentence. *Caldwell,* at 336. The introduction of irrelevant matter is especially troubling in the penalty phase of a capital case. This court has held that the introduction of irrelevant evidence of a defendant's exercise of his right to bear arms required reversal of the death sentence. *State v. Rupe,* 101 Wn.2d 664, 683 P.2d 571 (1984). The concurring opinion in *Caldwell* agreed that the prosecutor's comments diminished the jury's sense of responsibility, but stated that accurate instructions delineating the existence and the limited scope of appellate review were constitutionally permissible. *Caldwell,* at 342 (O'Connor, J., concurring).

Either of these approaches, complete silence on the availability of appellate review or instructions explaining the limited scope of appellate review, are acceptable alternatives. What is not acceptable is information being given to the jury that its decision is appealable without any explanation of the scope of such appeals. What does the statement, "He will get appeals" mean to the average juror? A juror may well have no idea of the scope of appellate review or of the limited questions a reviewing court may properly ask. Mightn't a juror think that "higher" decision makers are more qualified or that a death sentence will be overturned on appeal if it is "wrong". Mightn't a juror be led to believe that his decision is merely the first step in a long line of equally powerful, broad–based decisions which could ultimately culminate with a final death penalty.

Rather than quibble over whether a given prosecutor's comments regarding appeal come close enough to the language which the prosecutor offered in the *Caldwell* case, I find it more important to look to the dangers which moved the Supreme Court in Caldwell to reverse the death penalty. Any reference to appeals which fails to warn the jury of the limited scope of appeal interjects factors into the decisionmaking process which we cannot know or assess.

The *Caldwell* Court recognized that an appellate court, unlike a capital sentencing jury, is wholly ill suited to evaluate the appropriateness of death in the first instance. *Caldwell,* at 330. The dangers the *Caldwell* Court foresaw from a prosecutor introducing the availability of appellate review include concerns that: the jury may shift its sense of responsibility to an appellate court; the jury may misunderstand the limited nature of appellate review; the jury may impose the death penalty merely to send a message of extreme disapproval to the defendant while relying on an appellate court to reduce the sentence; or a divided jury may be more likely to agree, relying on appellate review. This last concern is most acute in this case since this court's 5–to–4 decision in Jeffries' direct appeal suggests that a rational juror could have reached a different decision.

As Justice Marshall has written, "[w]here life itself . . . hangs in the balance, a fine precision in the process must be insisted upon." *Lockett v. Ohio,* 438 U.S. 586, 620, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978) (Marshall, J., concurring). In *Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976), the United States Supreme Court explained that the goal in a capital case is to focus the attention of the jury on the particularized circumstances of the crime and the defendant. By interjecting the availability of appeal into the jury's deliberations, the attention is shifted away from focus on this particular defendant and his crime and away from the inquiry whether that crime deserves the death penalty. In *Caldwell* the Court vacated

the death sentence because it could not conclude the comments "had no effect on the sentencing decision". I would likewise find in this case that we cannot determine what effect the comments regarding appeal had on the jury's decision. We cannot know that the sentence of death would still have been handed down in this close case had the prosecutor not interjected the possibility of appeals.

I would find it fairer to prosecutors, judges, defendants and the public to draw a bright line and hold that any reference made by a prosecutor regarding the availability of appeals which is made in the penalty phase of a capital case is reversible error.

UTTER and DOLLIVER, JJ., concur with PEARSON, C.J.

UTTER, J. (dissenting)—I dissent because the instructions given to the jury did not require unanimity as to alternatives within each statutory aggravating circumstance. As a consequence, the defendant was denied his right to a unanimous verdict and this court is unable to engage in any rational review of the decision.

As Justice Pearson's dissent in Jeffries' direct appeal points out, "the statutory aggravating factors play a paramount role in the constitutionality of Washington's death penalty scheme." *State v. Jeffries,* 105 Wn.2d 398, 441, 717 P.2d 722, *cert. denied,* 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). It is the finding of at least one aggravating circumstance which satisfies the constitutional imperative of narrowing the class of persons eligible for the death penalty. *State v. Kincaid,* 103 Wn.2d 304, 311, 692 P.2d 823 (1985), citing *Zant v. Stephens,* 462 U.S. 862, 877, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983); *State v. Bartholomew,* 101 Wn.2d 631, 635–36, 683 P.2d 1079 (1984); *State v. Campbell,* 103 Wn.2d 1, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094, 85 L. Ed. 2d 526, 105 S. Ct. 2169 (1985). Under Washington law, criminal defendants may be convicted only when the jury reaches a unanimous verdict. *State v. Mak,* 105 Wn.2d 692, 735, 718 P.2d 407, *cert. denied,* 479

U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). However, the majority here holds that unanimity is required only in a conclusory way, and would not require the jury to unanimously agree as to which specific facts support the alternative ways of committing an act which constitutes an aggravating circumstance. Since it is the finding of an aggravating circumstance which allows the imposition of a sentence of death, I find it the height of irony that unanimity is not required for this most critical of all decisions.

The majority relies on the *Arndt* rule that *"if substantial evidence supports each of the alternate means of committing the single crime charged,* and the alternate means are not repugnant to one another, jury unanimity as to the mode of commission is not required." (Italics mine.) *State v. Whitney,* 108 Wn.2d 506, 508, 739 P.2d 1150 (1987), citing *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976). I would reiterate my prior opinion that following *Arndt* fails to satisfy the due process requirement of *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). *Winship* requires proof beyond a reasonable doubt as to every fact necessary to constitute the crime. My conviction that the *Arndt* rule violates the *Winship* mandate makes its application in a noncapital case most troubling. However, in a death penalty case, such an analysis is particularly repugnant. The United States Supreme Court has repeatedly said that under the Eighth Amendment "'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.'" *Caldwell v. Mississippi,* 472 U.S. 320, 329, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985), quoting *California v. Ramos,* 463 U.S. 992, 998–99, 77 L. Ed. 2d 1171, 103 S. Ct. 3446 (1983).

In any event, application of the *Arndt* test is misplaced under these facts. *Arndt* is applied *only* if substantial evidence supports *each* of the alternative means of committing the single crime charged. *Arndt,* at 376. This court has repeatedly recognized that in order to submit alternative

means to the jury, there must be sufficient evidence to support each of the methods charged. *State v. Franco,* 96 Wn.2d 816, 823, 639 P.2d 1320 (1982); *State v. Green,* 94 Wn.2d 216, 232, 616 P.2d 628 (1980). This court has recently reiterated the qualifying language in the *Arndt* rule when it stated:

> *Because* constitutionally sufficient evidence supports *both* charged alternatives, the lack of jury unanimity does not entail the danger present in *Green* II that any of the jury members may have based their finding of guilt on an invalid ground. . . . We agree that an instruction on jury unanimity as to the alternative method found is preferable because it eliminates potential problems which may arise when one of the alternatives is not supported by substantial evidence . . .

(Italics mine.) *Whitney,* at 511. I would hold that this is just such a case, and that the "potential problems" envisioned by the *Whitney* court must be addressed here.

In *State v. Green, supra,* this court found that lack of an instruction on unanimity as to two alternative ways to commit aggravated murder required reversal. The *Green* court found that since (1) the jury was not required to be unanimous as to which alternative means it had relied upon, and (2) that one of the alternatives was unsupported by substantial evidence, the court must reverse. The court found it was not possible to know whether the jury (or some of the jurors) had rested its determination of the existence of an aggravating factor on the alternative for which no substantial evidence existed. *Arndt* was inapplicable in *Green,* as it is in the present case, because one of the alternative means is unsupported by substantial evidence.

In the present case, one of the aggravating circumstances submitted to the jury was: "There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant; . . ." Court's instruction 8; RCW 10.95.020(8). The majority in Jeffries' direct appeal ignores the alternatives in instruction 8 and

simply and erroneously states that the jury found a "common scheme." *Jeffries,* at 429. The jury in fact found the murders were part of a common plan or scheme *or* the result of a single act. The dissent in *Jeffries* points out:

> Preliminarily, the State has not argued that the murders were a result of "a single act". Such an argument would fail because no evidence was presented which shows the Skiffs were killed together, in one act, by Jeffries. In fact, the State's theory, adopted by the majority, is that Phil Skiff was killed first and that Inez Skiff was murdered later that day. That theory precludes a conviction based on a "single act".

*Jeffries,* at 448. Therefore, since one of the alternative means in the instructions submitted to the jury was unsupported by evidence, this case cannot be analyzed under the *Arndt* rule, but instead is placed squarely within the reasoning in *Green.*

Not only is this death penalty infirm under state law because of the misapplication of the *Arndt* rule, but it is also subject to challenge under federal case law. The majority concludes:

> The *Winship* requirement, however, is already satisfied by our rule that "sufficient evidence" be presented of each means, as that phrase is interpreted in *Green* in light of *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Thus, unanimity on each set of elements is not mandated by *Winship.*

Majority opinion, at 338. The problem with this rationale is that it is based on the false assumption that there was substantial evidence to support a finding that the murders were committed in a "single act."

Additionally, as the *Green* court concluded, submitting a method or means to the jury for which there is no substantial evidence and not requiring a unanimous verdict on means runs afoul of the *Jackson* decision. *Jackson* held that on review the proper test is whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt.

"After *Winship* . . . the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support *a finding of guilt beyond a reasonable doubt.*"

*Green,* at 220–21. The *Franco* court (discussing *Green*) explained that because one of the means to commit aggravated murder was unsupported by substantial evidence "*that issue should not have been submitted to the jury.*" (Italics mine.) *State v. Whitney,* 108 Wn.2d 506, 509, 739 P.2d 1150 (1987), quoting *State v. Franco, supra.*

Because no substantial evidence supports one of the alternatives found in instruction 8 and because we have no unanimous jury finding on which means the jury believed, it is impossible for this court to know whether the jury based its verdict of aggravated murder on invalid grounds. Every fact necessary to constitute the crime charged must be proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 363, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The presence of an aggravating circumstance is a prerequisite to imposition of the death penalty. Surely such a critical determination must be susceptible to appellate scrutiny and a verdict form which fails to direct the jury to reach unanimity on this crucial fact surely runs afoul of the *Winship* requirement. For proper review of a death sentence, it is necessary for this court to know how many aggravating circumstances the jury determined were present. As we pointed out in *State v. Campbell, supra,* the number of aggravating circumstances is relevant in making the determination required by RCW 10.95.130(2)(b) as to proportionality of the death sentence.

In *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir. 1977), the court recognized that "[t]he unanimity rule . . . requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime

charged." I agree with the recent Third Circuit case which reasoned:

When the government chooses to prosecute under an indictment advancing multiple theories, it must prove beyond a reasonable doubt at least one of the theories to the satisfaction of the entire jury. It cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict. Conviction by a jury that was not unanimous as to the defendant's specific illegal action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count.

*United States v. Beros,* 833 F.2d 455, 462 (3d Cir. 1987).

In *Gardner v. Florida,* 430 U.S. 349, 358, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977), the United States Supreme Court noted: "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." It is difficult to see how the defendant or the community can perceive a death decision to be based on reason if a jury is not required to agree and to state the elements it believes support a finding of aggravating circumstances.

RCW 10.95.100 requires this court to review all sentences imposing death. We must answer the question whether there was sufficient evidence to justify the jury's affirmative finding to the question posed by RCW 10.95.060(4): "'Having *in mind the crime* of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?'" (Italics mine.) *State v. Jeffries, supra.* The crime for which the defendant was sentenced to death was aggravated first degree murder which necessarily includes the finding of an aggravating circumstance. RCW 10.95.020. However, the fact that the jury was not required to unanimously agree on the different alternatives within the proposed aggravating circumstances makes meaningful review impossible. We are unable to carry out our statutory

mandate to review this sentence of death because we cannot know what aggravating circumstance the jury had in mind when it endeavored to determine if leniency was appropriate. The United States Supreme Court has stated: "It [a state] must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" (Footnotes omitted.) *Godfrey v. Georgia,* 446 U.S. 420, 428, 64 L. Ed. 2d 398, 100 S. Ct. 1759 (1980). Since there is no unanimous agreement by the jury to tell this court which alternatives within the aggravating circumstance they believed were present, this court can only search the record and guess at what they might have found. This is hardly the rational review envisioned by the United States Supreme Court or mandated by our own statute.

PEARSON, C.J., and DOLLIVER, J., concur with UTTER, J.