# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 71852-5-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANK JOSEPH NELSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 20, 2015 |
| | ) | |

DWYER, J. — Frank Nelson appeals from the judgment entered on a jury's

verdict finding him guilty of trafficking in stolen property in the second degree.

Nelson contends that the statutory definition of "traffic" creates alternative means

of committing the offense of trafficking in stolen property. Thus, he asserts, the

State must adduce sufficient evidence on each of the alternative means in order

to sustain the conviction. He further asserts that the State failed to do so.

Nelson also contends that the trial court erred, violating his Fifth Amendment

rights, by allowing into evidence his answers to certain pre-Miranda[1]-warning

questions—posed by police officers—regarding his true identity. We reject

Nelson's contentions, concluding both that the statutory definition of "traffic" does

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

not create alternative means of committing the offense at issue and that Nelson's Fifth Amendment rights were not violated. Consequently, we affirm.[2]

I

On January 22, 2014, Cam Ta reported that his blue-green and silver-white Sedona Giant mountain bike had been stolen from outside of a grocery store in Mill Creek. On January 31, Ta discovered a listing on Craigslist for a Sedona Giant mountain bike with a description matching that of his stolen bicycle. He informed the police. Everett Police Officer Maryjane Hacker instructed Ta to call the telephone number provided on the listing, agree to purchase the bicycle, and set up a buy. Ta called the provided telephone number using his cell phone and agreed to purchase the bicycle from the speaker—later identified as Nelson—for $120 at the Texaco gas station on 128th Street, just outside of Everett, approximately 30 minutes after their conversation. Ta arrived at the Texaco station in his vehicle, identified his bicycle, and called Officer Hacker to relay the information. Hacker then arrived and made contact with Nelson who was standing near the bicycle and talking on his cell phone. Hacker then initiated the following conversation with Nelson:

    Hacker: Is this your bike?
    Nelson: No.
    Hacker: Do you know whose bike this is?
    Nelson: I think it might be someone inside the store.
    Hacker: Are you sure this isn't your bike? Are you sure you're not
            here to sell it?
    Nelson: No, no, no, not me.

---

[2] Nelson also submits a pro se statement of additional grounds pursuant to RAP 10.10. He does not raise any new issues and, as such, does not establish an entitlement to appellate relief.

Nelson then started walking away from Hacker, at which point Officer Albright—one of the two officers Hacker had enlisted for back up—started to approach Hacker and Nelson. Ta then "came barreling into the parking lot, . . . got out of his car and shouted 'That's my bike. That's my bike. We got you. You're under arrest.'" Nelson responded by saying, "No, no," and backing further away. Ta stated "that he was just on the phone with him [Nelson]." Nelson then started to remove the battery from his cell phone. Officers Albright and Hacker grabbed Nelson's hands, took the cell phone, placed Nelson's hands in handcuffs, and sat him on Hacker's patrol car's bumper. Hacker had Ta dial the seller's telephone number. The cell phone that Hacker had just taken from Nelson rang, and it was Ta's telephone number on the screen. Hacker confirmed that the bicycle was the one that Ta had reported stolen, returned it to Ta, and arrested Nelson for trafficking in stolen property.

Prior to advising Nelson of his Miranda rights, Hacker asked Nelson who he was. Nelson said that his name was Joseph Thomas Higgins, and provided a date of birth. Hacker was unable to verify the provided name as authentic through a records check. Hacker then "cautioned [Nelson] about lying about who he was and told him that he would be committing a separate crime of making false or misleading statements to a public servant if he continued to try to deceive me [Hacker] about who he was." Nelson said that he understood, was not lying, and that his name would be in a California database. Hacker found a match for the name in California,

but the physical description associated with the name did not match Nelson's physical appearance and Nelson could not confirm the California address associated with the name.

Hacker then advised Nelson of his <u>Miranda</u> rights and proceeded to ask Nelson about the bicycle. Nelson responded that he had bought it a week ago from "Joe" for $100, but was now selling it because he needed money. Nelson, however, would not, or could not, provide a last name or a telephone number for "Joe."

Nelson was charged by information with trafficking in stolen property in the second degree. A jury returned a guilty verdict. Nelson was sentenced to 55 months of incarceration and ordered to pay various amounts of fines and assessments. He now appeals.

## II

Nelson contends that insufficient evidence was adduced at trial to sustain a conviction for trafficking in stolen property in the second degree. This is so, he asserts, because the statutory definition of "traffic" creates two alternative means of committing the offense. Hence, he urges, given that the jury was not required to unanimously agree as to which means was proved, the State needed to adduce sufficient evidence to prove both alternative means, and it did not. We disagree.

In Washington, a criminal defendant is entitled to a unanimous jury verdict. WASH. CONST. art. I, § 21; <u>State v. Stephens</u>, 93 Wn.2d 186, 190, 607 P.2d 304 (1980) (citing <u>State v. Badda</u>, 63 Wn.2d 176, 385 P.2d 859 (1963)).

> This right may also include the right to a unanimous jury determination as to the *means* by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime. In reviewing this type of challenge, courts apply the rule that when there is sufficient evidence to support each of the alternative means of committing the crime, express jury unanimity as to which means is not required. If, however, there is insufficient evidence to support any means, a particularized expression of jury unanimity is required.

State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014);[3] accord State v. Ortega-Martinez, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994); In re Pers. Restraint of Jeffries, 110 Wn.2d 326, 336-37, 752 P.2d 1338 (1988); State v. Whitney, 108 Wn.2d 506, 507, 739 P.2d 1150 (1987); State v. Arndt, 87 Wn.2d. 374, 377, 553 P.2d 1328 (1976).

However, as we have previously stated, "The Washington Supreme Court has rejected the application of this doctrine [sufficient evidence on each alternative means] to 'means within means.'" State v. Al-Hamdani, 109 Wn. App. 599, 604, 36 P.3d 1103 (2001) (citing Jeffries, 110 Wn.2d 326). "[T]he alternative means doctrine does not apply to mere definitional instructions; a statutory definition does not create a 'means within a means.'" Owens, 180 Wn.2d at 96 (citing State v. Smith, 159 Wn.2d 778, 787, 154 P.3d 873 (2007)); accord, State v. Linehan, 147 Wn.2d 638, 646, 56 P.3d 542 (2002).

Further, the court in Owens held that RCW 9A.82.050(1) sets forth two alternative means of trafficking in stolen property in the first degree:

---

[3] Washington law differs from federal law in this regard. In federal prosecutions, "jury unanimity is not required as to the means by which a defendant commits a crime, regardless of whether there is sufficient evidence to support each of the alternative means." Owens, 180 Wn.2d at 95 n.2.

> (a) A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or
>
> (b) who knowingly traffics in stolen property

See 180 Wn.2d at 99-100. By interpreting "traffics in stolen property" as setting forth a single alternative means, the court in Owens implicitly repudiated the notion that the definition of "traffic" creates yet additional alternative means.

The statute defining trafficking in stolen property in the second degree provides that: "A person who recklessly traffics in stolen property is guilty of trafficking in stolen property in the second degree." RCW 9A.82.055. This provision sets forth only one means of committing the offense.

The due process clauses of the federal and state constitutions, U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3, require that the State prove each element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

A claim of evidentiary insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537,

551, 238 P.3d 470 (2010); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

To authorize the jury's verdict the State needed to adduce sufficient evidence that Nelson "trafficked in stolen property." Jury Instruction 5. The jury was instructed that "[t]o 'traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property of another person, or to buy, receive, possess, or obtain stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." Jury Instruction 6.

Nelson had possession of Ta's stolen bike, and he intended to sell that bike, as evidenced through his Craigslist ad and subsequent planned sale to Ta. As to whether the bike was, in fact, stolen, the jury was convinced that it was and we defer to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. Killingsworth, 166 Wn. App. at 287. Viewed in the light most favorable to the State, sufficient evidence was adduced that Nelson "trafficked in stolen property."

III

Nelson contends that Officer Hacker's repeated questioning as to his real name violated his Fifth Amendment rights. This is so, he asserts, because the

questioning was not performed during the booking process but, rather, during a field investigation. Further, Hacker advised Nelson that, in addition to trafficking in stolen property, he could be arrested for making false statements. Thus, Nelson avers that Hacker should have known that questioning Nelson about his real name would have led to an incriminating answer. We disagree.

To determine if police engaged in "interrogation" for Miranda purposes, "we defer to the trial court's findings of fact but review its legal conclusions from those findings de novo." In re Pers. Restraint of Cross, 180 Wn.2d 664, 681, 327 P.3d 660 (2014) (citing United States v. Poole, 794 F.2d 462, 465 (9th Cir.1986)).

The Fifth Amendment's protection against self-incrimination includes the right to be informed of one's rights before a custodial interrogation takes place. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); State v. Lavaris, 99 Wn.2d 851, 856-57, 664 P.2d 1234 (1983). Statements obtained in response to a custodial interrogation are inadmissible if not preceded by proper warnings. Miranda, 384 U.S. at 444; Lavaris, 99 Wn.2d at 856-57. These warnings include the person's "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444. However, not all custodial statements are a product of interrogation. Rhode Island v. Innis, 446 U.S. 291, 299, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). For a statement to fall within Miranda's purview, it must be made in response to interrogation. Innis, 446 U.S. at 299. "'[I]nterrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the

police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. This exception for words or actions on the part of the police that are "normally attendant to arrest and custody," Innis, 466 U.S. at 301, is known as the routine booking procedure exception. United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983).

Application of the routine booking procedure exception to the Miranda rule does not depend upon the nature of the procedure during which the question is asked but, rather, it depends upon the nature of the question. State v. Sargent, 111 Wn.2d 641, 651, 762 P.2d 1127 (1988). A police request for "routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating." United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985); accord State v. Walton, 64 Wn. App. 410, 414, 824 P.2d 533 (1992), abrogated on other grounds by In re Cross, 180 Wn.2d 664. "Only if the government agent should reasonably be aware that the information sought . . . is directly relevant to the substantive offense charged, will the questioning be subject to scrutiny." McLaughlin, 777 F.2d at 391-92.

The contested questioning herein concerned Nelson's true name, which is indisputably "routine information necessary for basic identification." McLaughlin, 777 F.2d at 391. Thus, it falls under the booking exception, as the nature of the question is one requesting routine information, despite the fact that the questioning was performed in the field. Further, the substantive offense charged

was trafficking in stolen property, to which Nelson's identity is not directly relevant. As such, the questioning about his name is not a ground for reversal.

Nelson relies on Timbers v. Commonwealth, 28 Va. App. 187, 199, 503 S.E.2d 233 (1998), to contend that because Hacker advised him that it was a crime to make false statements, and subsequently arrested him for making false statements,[4] Hacker's questions were necessarily part of a criminal investigation. Thus, Nelson maintains that the questions fell outside of the booking exception as they were designed to obtain incriminating information. However, the Virginia Court of Appeals clarified Timbers in its later decision in Watts v. Commonwealth, 38 Va. App. 206, 562 S.E.2d 699 (2002). In Watts, the Virginia Court of Appeals stated that "[the officer's] inquiries to Timbers [about her name] constituted [an] interrogation in violation of Miranda because the officer was clearly investigating a prior criminal act [the signing of an official document with a false name] and intended to elicit an incriminating response from Timbers." Watts, 38 Va. App. at 220.

Here, the prior criminal act being investigated was that of trafficking in stolen property. The warning of the potential for criminal charges for making false statements was contemporaneous with the false statements and tangential to the substantive offense of trafficking in stolen property. It is a stretch to imagine that when a law enforcement officer is investigating a separate crime, is

---

[4] In her police report, Officer Hacker states that she arrested Nelson for trafficking in stolen property and, later, arrested him again for making false statements to a police officer. Obviously, this is not correct. Nelson was arrested once. There was, as a factual matter, no "rearrest."

trying to obtain an individual's name, and advises the individual that it is a crime to make false statements, that the officer may no longer inquire into the person's name without first announcing the <u>Miranda</u> rights.  Such is not the law.

Affirmed.

We concur: