201 P.3d 1078 (2009)
In re the Matter of the DETENTION OF Michael R. SEASE, Appellant.
No. 36600-2-II.
Court of Appeals of Washington, Division 2.
February 24, 2009.
*1080 Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Jana Ranae Franklin, Attorney General's Office, Seattle, WA, for Respondent.
VAN DEREN, C.J.
¶ 1 Michael Sease appeals the trial court's order for involuntary civil commitment as a sexually violent predator (SVP) under chapter 71.09 RCW.[1] He argues that (1) he was denied his right to a unanimous jury verdict on the specific personality disorder that caused him to be an SVP and (2) the State failed to meet its burden of proving that his mental condition would cause him to reoffend. He also argues that the State committed prosecutorial misconduct in its closing argument, entitling him to a new trial. We affirm.

FACTS
¶ 2 Michael R. Sease was convicted of first degree kidnapping on November 30, 1988, and of first degree rape on December 14, 1988. He was sentenced to 78 months and 240 months, respectively. Sease was scheduled for release on April 2, 2005. On March 31, 2005, the State submitted a petition seeking Sease's involuntary civil commitment as an SVP.
¶ 3 In its commitment petition, the State alleged that Sease was an SVP because he suffered from two personality disorders borderline personality disorder and antisocial personality disorder  that caused Sease "to have serious difficulty in controlling his dangerous behavior and make him likely to engage in predatory acts of sexual violence unless confined to a secure facility."[2] Clerk's Papers (CP) at 1-2. Following a hearing, the trial court found probable cause and directed Sease's custodial detention and an evaluation. The court ordered that Sease be transferred from prison to the Special Commitment Center on McNeil Island.
¶ 4 Before trial, the State filed ten motions in limine and its proposed jury instructions. The trial court struck the phrase "mental abnormality" from the State's proposed jury instructions because the State and Sease agreed that neither planned to argue that Sease had a mental abnormality.[3] Report of Proceedings (RP) (June 27, 2007) at 54.
¶ 5 The trial court discussed jury instructions with the parties twice at trial, once before the evidence was complete and again before it read the instructions to the jury. Sease did not object to the jury instructions and did not propose alternative jury instructions on either occasion. When the trial court asked Sease's counsel if she took exception to any jury instruction, she answered, "No, Your Honor." RP (July 11, 2007) at 601.
¶ 6 Dr. Dennis Doren testified as the State's expert. He testified that he interviewed Sease on February 17, 2005. Doren diagnosed Sease with three personality disorders: (1) antisocial personality disorder, (2) borderline personality disorder, and (3) narcissistic personality disorder.[4] Doren noted *1081 that there are a total of 11 personality disorders listed in the diagnostic manual.[5] "[F]or each of them, what we look at is the pattern of behavior. That is the best way to describe what a personality disorder is."[6] RP (July 2, 2007) at 124-25. Doren also diagnosed Sease with alcohol dependence.
¶ 7 Doren then testified that "each of [Sease's] personality disorders caused him serious difficulty in controlling his behavior" and that the antisocial personality disorder and borderline personality disorder "predispose him to commit criminal sexual acts and make him likely to commit a criminal sexual act in the future if not confined." RP (July 2, 2007) at 173. He noted that not all people with these disorders manifest sexually violent behavior but that Sease did.[7] He characterized Sease's narcissistic personality disorder and his alcohol dependency diagnosis as "other risk considerations" for reoffense. RP (July 2, 2007) at 175.
¶ 8 Doren also testified about "personality disorder[s that] make[] the person likely to engage in predatory acts of sexual violence if not confined to a secure facility." RP (July 2, 2007) at 176. In assessing this risk, Doren used three different actuarial risk assessment instruments to determine Sease's "likelihood for certain kinds of sexual reoffending in the future." RP (July 2, 2007) at 180. He also scored Sease using the Psychopathy Checklist Revised, a psychological test. Finally, he looked at whether "protective factors" existed that would lower Sease's risk of reoffending. RP (July 2, 2007) at 206. Specifically, he looked at (1) whether Sease had participated in a sex offender treatment program, (2) whether Sease would have mandatory community supervision if released, and (3) Sease's age. He determined that these protective factors were not present for Sease.
¶ 9 Finally, Doren testified:
[THE STATE:] [I]s it your opinion to a reasonable degree of psychological certainty that Mr. Sease suffers from antisocial borderline narcissistic personality disorders?
[DR. DOREN:] Yes, I believe he has all three of those personality disorders to a reasonable degree of professional certainty.
[THE STATE:] Is it your opinion to a reasonable degree of professional certainty that at least two of those disorders do cause him or make him likely to engage in predatory acts of sexual violence if he is not confined to a secure facility?
[DR. DOREN:] It is my opinion to a reasonable degree of professional certainty that Mr. Sease's antisocial personality disorder and his borderline personality disorder, each make him likely to engage as the rest of the phrase would suggest.[8]
RP (July 2, 2007) at 211.
¶ 10 Dr. Theodore Donaldson testified as Sease's expert. Donaldson testified that, *1082 while evaluating Sease, he "was looking at whether he suffers from mental abnormality." RP (July 9, 2007) at 426-27. And he looked at whether Sease would reoffend. Donaldson concluded that Sease had borderline personality disorder and that he "wouldn't really argue much" if someone diagnosed Sease with antisocial personality disorder. RP (July 9, 2007) at 428. But he disagreed with Doren's determination "[t]hat a personality disorder predisposes a person to sexual violence." RP (July 9, 2007) at 434. He also testified that he did not believe that Sease had difficulty controlling his behavior.[9]
¶ 11 The jury unanimously concluded that the State proved "beyond a reasonable doubt that Michael Sease is a sexually violent predator." CP at 114 (emphasis omitted). The trial court entered a commitment order on July 12, 2007.
¶ 12 Sease appeals.

ANALYSIS
¶ 13 Sease first argues that the trial court denied him his right to a unanimous jury when it failed to give a unanimity instruction. He further argues that the State's evidence was insufficient to prove that Sease is an SVP under chapter 71.09 RCW. Finally, Sease argues that the State committed prosecutorial misconduct in its closing argument. We disagree.

I. Unanimity Instruction
¶ 14 Sease argues that the trial court erred when it failed to provide a unanimity instruction. He asserts that "where the state offers multiple diagnos[e]s to support its claim that a person suffers a personality disorder[,] the unanimity requirement of Petrich, adopted in Halgren, required the jury to unanimously agree as to which diagnosis made him an SVP." Br. of Appellant at 7-8 (citing State v. Petrich, 101 Wash.2d 566, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wash.2d 403, 756 P.2d 105 (1988); In re Det. of Halgren, 156 Wash.2d 795, 132 P.3d 714 (2006)).

A. Failure To Propose Unanimity Instruction
¶ 15 The State argues that, "despite a lengthy discussion regarding the term `personality disorder[,]' Sease did not propose a unanimity instruction, nor did he object to the State's proposed instructions and the Court's instructions to the jury." Br. of Resp't at 14 (quoting RP (June 27, 2007) at 51). The State argues that "Sease's failure to propose a unanimity instruction should constitute a waiver and the issue should not be addressed for the first time on appeal." Br. of Resp't at 15. Sease does not respond to this argument in his reply brief.
¶ 16 Under RAP 2.5(a)(3), an appellant may not appeal an issue he did not object to at trial unless it is a "manifest error affecting a constitutional right." The lack of a required unanimity instruction has been held to be an error of constitutional magnitude and Sease may, therefore, raise it for the first time on appeal if it is manifest. RAP 2.5(a)(3); State v. Fiallo-Lopez, 78 Wash.App. 717, 725, 899 P.2d 1294 (1995). A manifest error is one that "actually affected the defendant's rights; it is the showing of actual prejudice that makes the error manifest." State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (internal quotation marks omitted).
¶ 17 If the trial court's failure to give a unanimity instruction was error and, if that error affected Sease's rights, the error is, therefore, subject to the constitutional harmless error analysis. Kitchen, 110 Wash.2d at 405-06, 756 P.2d 105. We hold that it was *1083 not error, manifest or otherwise, for the trial court to fail to give a unanimity instruction and, therefore, Sease cannot appeal this issue. However, because this is a recurring issue, we address the unanimity instruction argument briefly.

B. Unanimity Instructions
¶ 18 The parties do not dispute that the unanimity rules apply in SVP cases.[10] Here, the disagreement arises over whether a unanimity instruction is required where the State presents evidence of two diagnoses, i.e., in this case, two personality disorders instead of evidence of a mental abnormality and a personality disorder. Sease argues that because "[a] unanimous jury must conclude that each element of the sexual predator commitment law is proven beyond a reasonable doubt," the jury must "unanimously agree as to which diagnosis made him an SVP." Br. of Appellant at 5-6, 8.

1. Unanimity instruction for alternative means
¶ 19 The right to a unanimous jury verdict applies in SVP civil commitment proceedings. RCW 71.09.060(1); In re Det. of Pouncy, 144 Wash.App. 609, 617, 184 P.3d 651, review granted, 165 Wash.2d 1007, 198 P.3d 512 (2008). Where there is more than one statutory alternative means of committing an offense, the Arndt[11] alternative means test generally requires that the jury unanimously agree on one of the alternative means. But the Arndt test does not require reversal if the evidence of each alternative is sufficient to allow the trier of fact to have found each means beyond a reasonable doubt. Halgren, 156 Wash.2d at 811, 132 P.3d 714.
¶ 20 The Washington Supreme Court has held that the alternative means test applies to SVP proceedings. Halgren, 156 Wash.2d at 810, 132 P.3d 714. In Halgren, the State's evidence showed that Halgren suffered from one mental abnormality and one personality disorder. 156 Wash.2d at 800, 132 P.3d 714. Halgren argued that the unanimity rules required that the jury determine unanimously whether it was Halgren's mental abnormality or his personality disorder that caused him to be an SVP. Halgren, 156 Wash.2d at 807, 132 P.3d 714. The court held that the SVP statute allowed for two alternative means  either mental abnormality or personality disorder.[12]Halgren, 156 Wash.2d at 811, 132 P.3d 714. But the court determined that the evidence was sufficient to prove both alternative means beyond a reasonable doubt and it, therefore, held that "the trial court did not violate Halgren's constitutional right to unanimity by failing to instruct the jury that it must reach unanimous agreement as to which condition satisfied RCW 71.09.020(16)." Halgren, 156 Wash.2d at 812, 132 P.3d 714. Halgren makes it clear that the actual diagnosed mental abnormalities or personality disorders are not the alternative means which the State must prove beyond a reasonable doubt; it is whether the person suffers from a mental abnormality or a personality disorder.

2. "Means within [a] Means"
¶ 21 Sease argues that only mental abnormality and personality disorder can be viewed as alternative means under the SVP statute. And because the State offered evidence of two personality disorders, rather than evidence of a mental abnormality and a personality disorder, he argues that the alternative means analysis did not apply. *1084 Therefore, he concludes that the State was required to obtain a unanimous jury verdict on which one of the two diagnosed personality disorders made him an SVP.[13]
¶ 22 We agree with Sease that the alternative means analysis does not apply when the State provides evidence of only mental abnormalities or only personality disorders. But we disagree that such evidence requires the jury to unanimously determine which abnormality or personality disorder causes a person difficulty in controlling their behavior such that they are likely to engage in predatory acts of sexual violence if not confined to a secure facility.
¶ 23 In In re Pers. Restraint of Jeffries, 110 Wash.2d 326, 339, 752 P.2d 1338 (1988), the Washington Supreme Court determined that "where a disputed instruction involves alternatives that may be characterized as a `means within [a] means,' the constitutional right to a unanimous jury verdict is not implicated and the alternative means doctrine does not apply." State v. Smith, 159 Wash.2d 778, 783, 154 P.3d 873 (2007) (internal quotation marks omitted) (quoting Jeffries, 110 Wash.2d at 339, 752 P.2d 1338). Jeffries was accused of first degree aggravated murder, and the "to convict" instructions included two statutory alternative aggravating circumstances. "[T]he trial court also instructed the jury that the aggravating circumstances were alternatives, that only one need be proved, and that the jury must unanimously agree whether either had been proved." Jeffries, 110 Wash.2d at 339, 752 P.2d 1338.
¶ 24 In the same way that Sease argues that the jury was required to unanimously agree on one personality disorder, Jeffries took the position that "the jury was required to unanimously agree as to alternative ways to satisfy each of the alternative aggravating circumstances." Jeffries, 110 Wash.2d at 339, 752 P.2d 1338. But the Court rejected Jeffries's argument and held that "[t]he trial court properly instructed the jury on the alternative aggravating circumstances," without requiring unanimity on the means to satisfy the statutory alternative aggravators. Jeffries, 110 Wash.2d at 340, 752 P.2d 1338.
¶ 25 And in Smith, the court determined that the State was not required to provide substantial evidence to support each of the definitions of assault provided in the jury instructions. 159 Wash.2d at 780, 154 P.3d 873. The court held, "[W]e decline to extend the reach of the alternative means doctrine beyond those statutory alternatives already directly provided for by the legislature in the assault charging statutes to encompass the common law assault definitions when submitted as a separate definitional instruction." Smith, 159 Wash.2d at 786, 154 P.3d 873.
¶ 26 The SVP statute delineates two alternatives for satisfying the State's burden of establishing a mental condition "which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility"  mental abnormality or personality disorder. RCW 71.09.020(16). There is no dispute that Sease suffered from one or, possibly, two personality disorders.
¶ 27 As in Jeffries, the jury here need only have unanimously found that the State proved that Sease suffered from a personality disorder that made it more likely that he would engage in acts of sexual violence if not confined to a secure facility. The jury need not have unanimously decided whether Sease suffered from borderline personality disorder or antisocial personality disorder. Therefore, the trial court did not err in failing to give a unanimity instruction and it is not an error that Sease can raise for the first time on appeal.

II. Sufficient Proof that Sease Is an SVP
¶ 28 Sease argues that "[b]efore the State may commit an individual as an SVP, a unanimous jury must conclude that each element of the sexual predator commitment law is proven beyond a reasonable doubt." Br. of Appellant at 10. He argues that "[d]ue [p]rocess requires more than mere proof of a risk to reoffend but rather proof of a risk to *1085 reoffend which stems from a mental disorder." Br. of Appellant at 11-12. Sease argues that the State failed to "prove [he] has a present mental condition that makes him more likely to reoffend" and that, instead, the State only "established a pattern of past sexual crimes." Br. of Appellant at 14.
¶ 29 To determine whether the jury's verdict in an SVP case was based on sufficient evidence, we must determine whether the evidence, "viewed in a light most favorable to the State, is sufficient to persuade a fair minded rational person that the State has proven beyond a reasonable doubt that [the defendant] is a sexually violent predator." State v. Hoisington, 123 Wash. App. 138, 147, 94 P.3d 318 (2004). "The substantial evidence test is satisfied if this court is convinced that `a rational trier of fact could have found each means of [fulfilling the SVP requirements] proved beyond a reasonable doubt.'" Halgren, 156 Wash.2d at 811, 132 P.3d 714 (quoting Kitchen, 110 Wash.2d at 410-11, 756 P.2d 105).
¶ 30 It was undisputed that Sease suffered from at least one personality disorder. Doren's testimony provided evidence from three different actuarial studies that Sease suffered from at least two personality disorders and Sease's own expert, Donaldson, agreed that Sease suffered from borderline personality disorder and probably also suffered from antisocial personality disorder. Doren also provided evidence that Sease's borderline and antisocial personality disorders, combined with the risk factors of alcohol dependency and narcissistic personality disorder, caused Sease to be more likely to reoffend if he was not confined to a secure facility.
¶ 31 It is inconsequential that Doren and Donaldson disagreed on whether Sease's borderline personality disorder and antisocial personality disorder caused Sease to be more likely to reoffend. Weighing the expert witnesses' testimony requires a determination of their credibility and credibility determinations are for the trier of fact and are not subject to our review. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004). Therefore, we do not consider whether the jury properly weighed the experts' testimony.
¶ 32 Viewing the evidence in the light most favorable to the State, there was sufficient evidence to persuade a fair minded rational person beyond a reasonable doubt that Sease suffers from a mental illness that makes him more likely to engage in predatory acts of sexual violence if he is not confined to a secure facility.

III. Prosecutorial Misconduct
¶ 33 Finally, Sease argues that some of the prosecutor's closing arguments amounted to prosecutorial misconduct. Specifically, he points to the following statement:
[THE STATE:] ... Does he rape people because he chooses to or because he can't help himself? Is it the chicken or the egg?... Does that make one rape better than the other because the person wants to do it or because they feel like they can't help themselves? No. Obviously, that is not why we are here. We're not here to figure those kinds of things out.
RP (July 11, 2007) at 651-52. Sease argues that this incorrectly stated the law, "[C]ontrary to the [State's] comments it is not a question of whether `one rape is better than the other,' but rather whether the risk of reoffense flows from a mental disorder." Br. of Appellant at 17 (internal citation omitted).
¶ 34 We review prosecutorial misconduct to determine whether improper conduct prejudiced the defendant. State v. Thomas, 142 Wash.App. 589, 593, 174 P.3d 1264, review denied, 164 Wash.2d 1026, 195 P.3d 958 (2008). Prejudice occurs where there is "a substantial likelihood that the misconduct affected the jury's verdict." Thomas, 142 Wash.App. at 593, 174 P.3d 1264. We measure possible prejudice by weighing the strength of the State's case and reverse only if there is a substantial likelihood that the misconduct affected the jury's verdict. State v. Avendano-Lopez, 79 Wash. App. 706, 712, 904 P.2d 324 (1995). Finally, where a defendant fails to object, he waives the issue unless the misconduct was "so flagrant or ill-intentioned" that it caused prejudice that could not be cured by the trial court's admonishment. State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997). *1086 Sease did not object to the State's closing argument. Therefore, Sease must show that the State's statements constituted misconduct, caused prejudice, and that an admonishment from the trial court could not have cured any prejudice. Stenson, 132 Wash.2d at 719, 940 P.2d 1239.
¶ 35 In the challenged portion of the State's closing argument, the State explained to the jury that Donaldson confused the issue the jury had to address when he stated that "the issue is figuring out whether this is a case of poor self-regulation or impaired volition." RP (July 11, 2007) at 651. The State argued that it did not matter whether Sease raped because he "chooses to or because he can't help himself." RP (July 11, 2007) at 651. Contrary to Sease's assertions, the State's closing argument rejected the volitional issue Donaldson raised. The prosecutor stated, "Obviously, that is not why we are here. We're not here to figure those kinds of things out." RP (July 11, 2007) at 651-52. In doing so, the prosecutor did not commit misconduct.
¶ 36 The State was correct that the SVP statute does not require the State to show a lack of volition. The statute requires the State to prove that the mental abnormalities or personality disorders "make[] the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). Sease's argument that the State committed prosecutorial misconduct fails.
¶ 37 We hold that the State need not prove beyond a reasonable doubt which mental abnormality or personality disorder causes a person to be an SVP, that the State met its burden to prove that Sease's mental condition would cause him to reoffend if he were not confined to a secure facility, and that the State did not commit prosecutorial misconduct in its closing argument.
¶ 38 We affirm.
We concur: HOUGHTON and BRIDGEWATER, JJ.
NOTES
[1] A "sexually violent predator [is] any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16).
[2] In support of its petition, the State submitted a certification for determination of probable cause. It also submitted the curriculum vitae of Dr. Dennis Doren and a copy of Doren's evaluation of Sease.
[3] At the pretrial hearing, the State also conceded that the 1987 first degree kidnapping charge was not a crime of sexual violence because the underlying felony was not listed as part of the judgment. "[W]e have one conviction for a crime of sexual violence.... [W]e plan on just presenting to the jury the one [sexually violent offense], Rape in the First Degree." Report of Proceedings (RP) (June 27, 2007) at 50.
[4] When asked to define "personality disorder," Doren stated that a person with a personality disorder has "a pervasive and inflexible pattern of interacting with the world that causes him impairment in [] social or occupational functioning." RP (July 2, 2007) at 140. Doren explained that a person with a personality disorder has "a chronic long-term maladaptive way of interacting with his world," and that he "just keeps either hurting others or hurting himself over and over, a pattern that he doesn't ... seem to be able to fix." RP (July 2, 2007) at 124.
[5] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR (4th ed.2000).
[6] Doren also testified that antisocial personality disorder involves a pattern of "disregard for and violation of the rights of others." RP (July 2, 2007) at 125 (internal quotation marks omitted). A person with a borderline personality disorder has a pattern of instability in any of four areas: emotions, thinking, interaction with other people, or ability to control impulses. The pattern for narcissistic personality disorder is "that they have disdain for everybody else. Nobody is as good as they are. They are above. They should be treated specially. . . . Other people are, basically, worthless." RP (July 2, 2007) at 126.
[7] Doren testified that "[b]y definition, a personality disorder is somebody's pattern of interacting with the world. His pattern of behavior, typically. You have to look at that person's pattern." RP (July 2, 2007) at 173-74. For Sease, "[h]is pattern for antisocial personality disorder includes, not just general criminality ... but it includes multiple occasions of sexual offending.... Mr. Sease's pattern is a repetitive process of various kind[s] of offending including multiple sexual offending." RP (July 2, 2007) at 174. Doren testified that Sease had a similar pattern in relation to his borderline personality disorder.
[8] The State also called Sease to testify. Sease denied any wrongdoing. He admitted to suffering "a little bit" from borderline personality disorder but disagreed that he suffered from antisocial personality disorder. He admitted that he was "out of control with alcohol." RP (July 5, 2007) at 371. The State also called the victim of a 1980 assault and Detective Doug Margenson, the investigator assigned to the 1987 cases against Sease.
[9] In addition to calling Donaldson, Sease called his sister, Janet Fleischer, and Ron Wayman, a member of a ministry that visited Sease in prison. He also called Brenda Montgomery-Linn, the mental health nursing supervisor at Sease's prison, and Jeffrey Perry, a Department of Corrections mental health counselor. Finally, Sease called Dr. Leslie Sziebert, a psychiatrist at the Special Commitment Center. Sziebert testified that Sease had borderline personality disorder and narcissistic personality disorder, but did not believe Sease met the criteria for antisocial personality disorder.
[10] See also RCW 71.09.060(1) ("The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator.... When the determination is made by a jury, the verdict must be unanimous.").
[11] State v. Arndt, 87 Wash.2d 374, 376-78, 553 P.2d 1328 (1976).
[12] Legislative intent determines whether this court should analyze a statute under the alternative means framework.

.... [I]n this case, a single statutory provision, RCW 71.09.020(16), contains both bases for determining whether a person is an SVP. In addition, because the result to be accomplished whether one has a mental abnormality or a personality disorder is the same, commitment as an SVP, and because both mental illnesses are predicates for the SVP determination, the two mental illnesses are closely connected.
Halgren, 156 Wash.2d at 809-10, 132 P.3d 714.
[13] At oral argument, Sease argued that the different personality disorders constituted alternative acts, not means, and that is why the alternative means test did not apply to differing personality disorders or mental abnormalities. This argument was not briefed and we do not further address it.