# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of   )
                                              )
EVERETTE BURD,                  )     No. 67826-4-I

                                                )

             Appellant.        )     DIVISION ONE

                                                )

                                                )     UNPUBLISHED OPINION

                                                )

                                                )     FILED: July 8, 2013

GROSSE, J. — Failure to request a Frye[1] hearing on the validity of certain medical diagnoses precludes a defendant from challenging the validity of those medical diagnoses on appeal. Further, failure to request a Frye hearing does not constitute ineffective assistance of counsel where, as here, the diagnoses are accepted within the scientific community and our courts have previously held that Frye hearings are not required for those diagnoses. Finding no merit in the remaining arguments on appeal, we affirm the trial court's order of commitment.

## FACTS

In 1989, at age 14, Everette Burd was found guilty of first degree criminal trespass for entering a neighbor's home, rummaging through a 12-year-old's underwear drawer, handling the undergarments, and masturbating on the bed. In 1991, Burd sexually assaulted a 26-year-old house guest of a neighbor. Burd forced his way in, pushed the woman down, and grabbed her crotch. The woman escaped and Burd was adjudicated for first degree burglary, indecent liberties, and criminal trespass. Burd was sentenced to 168 weeks. Pending his

---

[1] Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).

appeal, Burd was released with conditions and treatment to be provided by Dr. Charles Lund.

Burd violated his conditions of release, including the sexual deviancy treatment requirements and was placed at Maple Lane School. While at Maple Lane, Burd pinched a staff member on her buttocks and grabbed her arm as she attempted to escape from him. He was also convicted of fourth degree assault at the age of 18. On August 27, 1996, Burd, then 20 years old, sexually assaulted a 17-year-old stranger, D.B. The victim had entered the bathroom in a church. While in the stall she noticed a man's shoes, and tried to leave. Burd grabbed her, placed her in a choke hold, and dragged her into another room. He ripped off her shirt and bra, squeezed her breasts, and placed his hands down her pants, uttering profanities. D.B.'s shouts were heard by another person who managed to pull Burd off D.B. Burd was arrested and pleaded guilty to first degree attempted rape for which he received a 90-month sentence.

In 1997, Burd was evaluated for his amenability for sex offender treatment. Burd admitted attacking a teenage boy and trying to rip off his clothes but denied that it was sexual. Throughout his incarceration, he had several sexually related infractions.

The State filed a petition to commit Burd as a sexually violent predator (SVP). Pending trial, Burd was admitted to the special commitment center in 2006, but refused treatment until 2009. When he began treatment he admitted that he had been masturbating the previous day for three hours nonstop to rape

fantasies involving the female staff at the hospital as well as women on the television.

At the commitment trial, the State presented expert testimony from Dr. Douglas Tucker, who conducted an assessment of Burd to determine if he met the SVP criteria. Dr. Tucker concluded that Burd's mental abnormalities predisposed him to commit sexual acts that endangered the health and safety of others and that he was likely to engage in predatory acts of sexual violence if not confined to a secure facility. Burd presented the expert testimony of Dr. Fabian Saleh, who disagreed with Dr. Tucker's diagnoses and questioned the validity of those diagnoses.

The jury found that Burd met the criteria for an SVP. Based on this finding, the trial court ordered him civilly committed. Burd appeals.

## ANALYSIS

Burd first contends that his commitment violates his rights to due process because it is premised on diagnoses that are overbroad, insufficiently precise, and not accepted by the medical profession. Burd also contends he received ineffective assistance of counsel because his counsel failed to request a Frye hearing on the diagnoses of paraphilia not otherwise specified (NOS) nonconsent and antisocial personality disorder.

Under SVP commitment statutes, due process requirements are satisfied "if a finding of dangerousness is linked to the existence of a mental abnormality or personality disorder that makes it seriously difficult for the person with the

abnormality or disorder to control his or her behavior."[2] Burd contends that paraphilia NOS nonconsent is not recognized by the psychiatric profession and that the admission of Dr. Tucker's testimony therefore violated his due process rights.

This court rejected a similar argument in In re Detention of Post,[3] noting that such an argument constituted an improper attempt to sidestep a failure to challenge the diagnosis by means of a Frye hearing in the trial court:

> Post improperly attempts to transform that which should have been raised as an evidentiary challenge in the trial court into a question of constitutional significance on appeal. In point of fact, Post attempts to sidestep the fact that he did not seek a Frye hearing in the trial court, and, thus, has not preserved an evidentiary challenge for review.[4]

In a Frye challenge, the trial court determines whether a scientific theory or principle "'has achieved general acceptance in the relevant scientific community.'"[5] A party's failure to raise a Frye challenge before the trial court generally precludes appellate review. Because Burd did not raise the issues below, the State did not have an opportunity to respond fully to the challenge he now asserts for the first time on appeal. Burd's expert testimony challenging the

---

[2] In re Det. of Post, 145 Wn. App. 728, 755, 187 P.3d 803 (2008), aff'd, 170 Wn.2d 302, 241 P.3d 1234 (2010) (citing Kansas v. Crane, 534 U.S. 407, 410, 413, 122 S. Ct. 867, 151 L. Ed 2d 856 (2002)).

[3] 145 Wn. App. 728, 187 P.3d 803 (2008).

[4] Post, 145 Wn. App. at 755-756.

[5] In re Pers. Restraint of Young, 122 Wn.2d 1, 56, 857 P.2d 989 (1993) (quoting State v. Martin, 101 Wn.2d 713, 719, 684 P.2d 651 (1984)), superseded by statute as stated in In re Det. of Thorell, 149 Wn.2d 724, 746, 72 P.3d 708 (2003) (LAWS OF 1995, ch. 216, § 9).

validity of the paraphilia NOS nonconsent diagnosis therefore goes to the weight of the evidence, not its admissibility.[6]

Burd's challenge to Dr. Tucker's diagnosis of antisocial personality disorder is likewise precluded from being raised on appeal. Burd argues that admitting evidence of this diagnosis violates due process guarantees because it is too imprecise and broad to differentiate a dangerous sexual offender from the typical criminal recidivist and, thus, the evidence was not helpful to the trier of fact under ER 702.[7] Again because Burd did not challenge Dr. Tucker's testimony on this basis below, he has waived the issue on appeal.[8]

Burd alternatively argues that his counsel's failure to request a Frye hearing on the medical diagnoses and to object to the admission of the antisocial personality diagnosis as being unhelpful under ER 702 denied him effective assistance of counsel. To establish ineffective assistance of counsel, a defendant must demonstrate both (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[9] Washington courts have repeatedly upheld commitments based

---

[6] See Post, 145 Wn. App. at 757 n.19; In re Det. of Berry, 160 Wn. App. 374, 382, 248 P.3d 592, rev. denied, 172 Wn.2d 1005 (2011).

[7] ER 702 provides that an expert witness may offer an opinion "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

[8] See Post, 145 Wn. App. at 756 n.16; see also In re Det. of Sease, 149 Wn. App. 66, 201 P.3d 1078 (2009) (civil commitment can be based on a personality disorder alone when supported by expert testimony).

[9] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

on paraphilia NOS nonconsent or antisocial personality disorder diagnoses under Frye or ER 702.[10]

Burd has not identified any SVP proceedings in which such evidence was excluded under Frye or ER 702. Indeed, any objection under ER 702 would have been overruled since courts have held that a civil commitment can be based on a personality disorder alone when supported by expert testimony.[11] On the record here, Burd cannot demonstrate any reasonable likelihood that the trial court would have excluded testimony on paraphilia NOS nonconsent and antisocial personality disorder diagnoses under either Frye or ER 702. Thus, Burd cannot demonstrate that his counsel was ineffective or that he suffered any prejudice.[12]

Exclusion of Evidence

Burd argues that the trial court erred in excluding portions of his expert's testimony. A trial court has broad discretion in admitting expert evidence and a party may introduce such evidence only where the expert is properly qualified, relies on generally accepted theories, and is helpful to the trier of fact.[13] An expert must have a sufficient factual foundation for his opinion.[14] Conclusory or speculative expert opinions that lack an adequate foundation are inadmissible.[15]

---

[10] See Post, 145 Wn. App. at 757 n.18; Young, 122 Wn.2d at 37.

[11] Sease, 149 Wn. App. 66.

[12] See McFarland, 127 Wn.2d at 334-35; see also Berry, 160 Wn. App. at 382.

[13] ER 702; Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 590, 602, 260 P.3d 857 (2011).

[14] Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 104, 882 P.2d 703 (1994).

[15] Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 177, 817 P.2d 861 (1991).

On cross-examination, Burd queried Dr. Tucker about a debate entitled "Stirring the DSM-V Caldron" that Dr. Tucker participated in at the annual American Academy of Psychiatry and the Law. At the conclusion of the debate, a symbolic vote was taken in which only two people in the audience voted to include paraphilic coercive disorder, while 32 people voted against its inclusion. Dr. Tucker characterized the audience as people who were not necessarily experts in sexual offenders.

Burd sought to continue this line of questioning with his own expert Dr. Fabian Saleh, but the State moved to exclude any testimony from Dr. Saleh about the informal vote that occurred at the debate. The State argued that because Dr. Saleh was not present, the testimony was hearsay and further there was no foundation for the reliability of the scientific evidence at the debate. In his offer of proof, Burd asserted that Dr. Saleh was the chair of the sex offender committee for several years at the American Academy of Psychiatry and the Law, that he would testify that in order to have a debate, peer reviewed articles and proposals had to be submitted, and that people vested in the outcome of the debates, including forensic psychiatrists attended. The court ruled that such a generic debate was not relevant under ER 703 as a basis for admissible expert testimony, and that Dr. Saleh's absence from the debate prevented him from characterizing the content and participators in the debate because he was not present. Because the testimony was hearsay, irrelevant, and not likely helpful to the jury, the trial court did not abuse its discretion by excluding it.

7

Jury Instruction

Burd argues that the evidence was insufficient to show that he suffered any mental abnormality or personality disorder and that the court erred in issuing the following instruction:

> [M]ental abnormality and personality disorder are alternative means to proving [the second element]. The jury need not be unanimous as to whether a mental abnormality or personality disorder has been proved beyond a reasonable doubt so long as each juror finds that at least one of these alternative means has been proved beyond a reasonable doubt.

Dr. Tucker testified that Burd suffered from four mental abnormalities—paraphilia NOS nonconsent, mild mental retardation, fetishism, and schizoaffective disorder, and two personality disorders—antisocial personality disorder and borderline personality disorder. Burd contends that because the State argued the combination of these diagnoses predisposed Burd to commit sexual violent offenses, the State failed to prove that each diagnosis in itself was sufficient to support a finding of mental abnormality or personality disorder.

But it is not the particular diagnosis that is the alternative means. Those diagnoses form the particular facts from which a jury could determine the presence of either a mental abnormality and/or a personality disorder. It is the presence of a mental abnormality and/or personality disorder that are two alternative means of establishing the mental illness element.[16] To do as Burd argues would create a means within a means unanimity analysis.

---

[16] In re Det. of Halgren, 156 Wn.2d 795, 811, 132 P.3d 714 (2006).

In re Detention of Sease is instructive.[17] There, the State relied on two personality disorders to establish the required element of mental abnormality or personality disorder. As here, the parties did not disagree that unanimity rules apply in SVP cases.[18] Sease argued that because he had two personality disorders, the jury needed to be unanimous on which of the two diagnoses made him an SVP. The court rejected the argument stating:

> The SVP statute delineates two alternatives for satisfying the State's burden of establishing a mental condition "which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility"—mental abnormality or personality disorder. RCW 71.09.020(16). There is no dispute that Sease suffered from one or, possibly, two personality disorders.
>
> As in [In re Personal Restraint of] Jeffries, [110 Wn.2d 326, 752 P.2d 1338 (1988)] the jury here need only have unanimously found that the State proved that Sease suffered from a personality disorder that made it more likely that he would engage in acts of sexual violence if not confined to a secure facility. The jury need not have unanimously decided whether Sease suffered from borderline personality disorder or antisocial personality disorder. Therefore, the trial court did not err in failing to give a unanimity instruction and it is not an error that Sease can raise for the first time on appeal.[19]

"Likely to Reoffend" Standard

Burd next challenges the "likely to reoffend" standard for determining whether an offender is at risk for reoffense, a part of the SVP determination. He contends that this standard is inconsistent with the clear and convincing evidence standard that is constitutionally required. But as he acknowledges, our state

---

[17] 149 Wn. App. 66, 201 P.3d 1078 (2009).

[18] In re Det. of Pouncy, 144 Wn. App. 609, 617, 184 P.3d 651 (2008), aff'd, 168 Wn.2d 382, 229 P.3d 678 (2010).

[19] Sease, 149 Wn. App. at 78-79; see also Halgren, 156 Wn.2d at 811 (unanimity instruction is not required as to which of the two types of mental illnesses specified in the statute underlies a determination that one is an SVP.)

supreme court has already rejected this argument in In re Detention of Brooks.[20]

The Brooks court stated:

> RCW 71.09.060(1)'s demand that the court or jury determine beyond a reasonable doubt that a defendant is an SVP means that the trier of fact must have the subjective state of certitude in the factual conclusion that the defendant more likely than not would reoffend if not confined in a secure facility. As set out in the statute, the fact to be determined is not whether the defendant will reoffend, but whether the probability of the defendant's reoffending exceeds 50 percent. As long as the SVP statute requires the fact finder to have the subjective belief that it is at least highly probable that the defendant is likely to reoffend, it meets the standard set forth in In re Dependency of K.R. Chapter 71.09 RCW meets and exceeds that standard. Brooks' constitutional claims fail.[21]

The "likely to reoffend" standard is constitutional.

Prosecutorial Misconduct

Burd argues that the prosecutor committed misconduct during her rebuttal argument. Prosecutorial misconduct requires a showing that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial.[22] A prosecutor may not appeal to the passions of the jury and encourage it to render a verdict based on emotion rather than properly admitted evidence.[23] The prosecutor has wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the

---

[20] 145 Wn.2d 275, 298, 36 P.3d 1034 (2001), overruled on other grounds by Thorell, 149 Wn.2d 724, 72 P.3d 708 (2003).

[21] 145 Wn.2d at 297-98; see also In re Det. of Mulkins, 157 Wn. App. 400, 407, 237 P.3d 342 (2010) (rejecting an identical constitutional challenge to RCW 71.09.020).

[22] State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003) (citing State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997)).

[23] State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988); State v. Echevarria, 71 Wn. App. 595, 598, 860 P.2d 420 (1993).

evidence in closing arguments.[24] Prejudice is established if there is a substantial likelihood the misconduct affected the jury's verdict. Where no objection is made to the remarks, the reviewability of the alleged prosecutorial misconduct depends on whether the prosecutor's conduct was so flagrant and ill-intentioned as to create prejudice that could not be negated by a curative instruction.[25]

The jury watched a video deposition of Dr. Tucker interviewing Burd.[26] In rebuttal argument, the prosecutor stressed that Burd was a predator, and did nothing more than paraphrase admitted testimony that the jury had already heard. Because the prosecutor's argument directly addressed Burd's own testimony and was responsive to issues argued by the defense, Burd fails to show that these remarks were improper.[27]

Accordingly, we affirm the commitment.

_Glover J_

WE CONCUR:

_Dwyer J._

_Cox, J._

---

[24] State v. Gregory, 158 Wn.2d 758, 860, 147 P.3d 1201 (2006).

[25] State v. Warren, 165 Wn.2d 17, 43, 195 P.3d 940 (2008) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

[26] Exhibit 78B is a CD (compact disc) of a portion of the transcript which was heard by the jury and Exhibit 72 provided by the State is an accurate transcription of that CD. Burd argues that the verbatim report of proceedings is the "official" record, but it is the CD itself that is official and was heard by the jury. The transcription the State provided to this court accurately reflects the recording of the CD.

[27] Stenson, 132 Wn.2d at 727.