FILED
COURT OF APPEALS
DIVISION II

2014 NOV 13 AM 9: 00

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>JERROD STOUDMIRE,<br>aka DUANE G. STOUDMIRE,<br><br>                       Appellant. | No. 45030-5-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — Jerrod Stoudmire appeals a trial court order civilly committing him as a sexually violent predator (SVP).[1] Stoudmire contends that the State failed to present sufficient evidence to support the jury's finding that he met the definition of an SVP. We affirm the trial court's civil commitment order.

## FACTS

Stoudmire has admitted to the following history of sexual misconduct against minor female victims. When Stoudmire was 12 or 13 years old, he molested two 8-year-old girls and a 10-year-old girl by touching the girls on their breasts and vaginal areas. After the girls' parents found out about Stoudmire's behavior, they scolded him but did not report his behavior to the police.

In November 1980, when Stoudmire was 15 years old, he touched a 9-year-old girl on her vaginal area over her clothing and forced her 6-year-old sister to touch his penis over his clothing. Based on this sexual misconduct, a juvenile court adjudicated Stoudmire guilty of two

---

[1] Chapter 71.09 RCW.

counts of indecent liberties[2] and committed him to 26 to 32 weeks in a juvenile correctional facility.

After his release from juvenile commitment in September 1981, Stoudmire volunteered at a community center as a dance instructor for children who were 9 to 14 years old. In 1983, when Stoudmire was 18 years old, he began sexually abusing BP,[3] an 11-year-old girl in his dance group. From 1983 to 1987, Stoudmire continued to commit hundreds of sexual acts against BP, which acts included sexual intercourse. During that same time period, Stoudmire also committed sexual acts against 6 other girls in his dance group, CM, BB, C_, V_, EB, and ED; each of the girls was 11 to 13 years old when Stoudmire began sexually abusing them.

In June 1987, the State charged Stoudmire with indecent liberties based on his sexual misconduct against ED. ED had told the police that Stoudmire was also committing sexual acts against other members of the dance group, but Stoudmire convinced BP and BB to deny ED's allegations against him. Stoudmire continued to commit sexual acts against members in his dance group while he was awaiting trial on his indecent liberties charge. In January 1988, a jury found Stoudmire guilty of indecent liberties and the trial court sentenced him to one year and one day of incarceration. While Stoudmire remained out of custody pending an appeal of his indecent liberties conviction, he continued to commit sexual acts against former members of his dance group, including BP and CM.

---

[2] Former RCW 9A.88.100 (1975).

[3] This opinion refers to the juvenile victims by their initials to protect their privacy interests. General Order 2011-1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crimes Cases*, available at http:www.courts.wa.gov/appellate_trial_courts/.

Stoudmire served his sentence for indecent liberties from December 1989 to October 1990. After Stoudmire was released from incarceration, he went to live with the family of an 11-year-old girl, HS. A short time after moving in with the family, Stoudmire, who was then 26 years old, began committing sexual acts against HS, which acts included sexual intercourse. Stoudmire continued sexually abusing HS until 1992. In July 1992, the State charged Stoudmire with one count of second degree child rape[4] for his sexual misconduct against HS. Around that same time, the State separately charged Stoudmire for his sexual misconduct against BP and CM. In September 1993, Stoudmire pleaded guilty to second degree child rape for his sexual misconduct against HS, and he pleaded guilty to second degree statutory rape,[5] second degree child rape, third degree child rape,[6] and two counts of indecent liberties for his sexual misconduct against BP and CM.[7] The trial court sentenced Stoudmire to a total of 198 months of incarceration.

---

[4] RCW 9A.44.076.

[5] Former RCW 9A.44.080 (1979). The legislature repealed former RCW 9A.44.080 in July 1988. LAWS OF WASHINGTON 1988, ch. 145, § 24. The State's information alleged that Stoudmire committed second degree statutory rape between September 1, 1985 and June 30, 1988, before the legislature had repealed former RCW 9A.44.080.

[6] RCW 9A.44.079.

[7] Our Supreme Court vacated Stoudmire's 1993 convictions of two counts of indecent liberties on statute of limitation grounds after Stoudmire filed a successful personal restraint petition. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 354-55, 5 P.3d 1240 (2000). The vacation of Stoudmire's indecent liberties convictions did not affect his total incarceration term.

The State filed a petition to civilly commit Stoudmire as a sexually violent predator shortly before Stoudmire's scheduled release date. At the jury trial, Stoudmire admitted to the sexual misconduct described above.

Dr. Harry Hoberman testified as the State's expert witness. Hoberman testified that he had interviewed and had administered psychological testing on Stoudmire in 2007 and 2011.[8] In evaluating Stoudmire's psychological condition, Hoberman also relied on several documents, including Stoudmire's medical records, DOC records, police reports, and court documents.

Hoberman diagnosed Stoudmire with two types of paraphilia—pedophilia and hebephilia.[9] Hoberman opined that Stoudmire's paraphilia diagnoses constituted mental abnormalities[10] under the SVP statute. In this regard, Hoberman testified that paraphilia is a congenital or an acquired condition. And Hoberman testified that the condition affected Stoudmire's emotional or volitional capacity in such a degree that it predisposed Stoudmire to

---

[8] Specifically, Hoberman testified that he had conducted three or four structured interviews and had administered the Minnesota Multiphasic Personality Inventory II (MMPI-II), the Millon Clinical Multiaxial Inventory second edition, the Paulhus Deception Scale, and the Personality Disorder Questionaire version 4 in 2007. He further testified that he had administered the MMPI-II, the Millon Clinical Multiaxial Inventory third edition, and the Multiphasic Sex Inventory II during his reevaluation of Stoudmire in 2011.

[9] Hoberman explained that paraphilia is a type of sexual disorder involving "recurrent, intense sexually arousing fantasies, sexual urges or behaviors." Report of Proceedings (May 28, 2013) at 107. Pedophilia is a paraphilia related to a sexual attraction to prepubescent children, whereas hebephilia is a paraphilia related to a sexual attraction to children who have attained puberty.

[10] RCW 71.09.020(8) defines "Mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others."

commit criminal acts endangering the health and safety of others based on Stoudmire's history of repeated sexual offending despite criminal sanctions.

Hoberman also diagnosed Stoudmire with two personality disorders: antisocial personality disorder and narcissistic personality disorder. Hoberman also determined that Stoudmire had a high level of psychopathy, which Hoberman described as "similar to a personality disorder." Report of Proceedings (RP) (May 28, 2013) at 137. Hoberman explained that "persons who have a higher degree of psychopathic traits are more likely to be involved in criminal behavior, violent behavior, [and] sexual offending." RP (May 28, 2013) at 137-38. Hoberman opined that Stoudmire's personality disorders constituted mental abnormalities under the SVP statute.

Hoberman stated his opinion that Stoudmire would more likely than not engage in predatory acts of sexual violence if not confined to a secure facility. Hoberman said that he based this opinion on Stoudmire's individual risk factors and by using actuarial tools to compare the recidivism rate of offenders that scored similarly to Stoudmire in the various psychological tests that Stoudmire completed. Hoberman concluded that, to a reasonable degree of psychological certainty, Stoudmire had one or more mental abnormalities and personality disorders that made him more likely than not to commit predatory acts of sexual violence if not confined to a secure facility.

Dr. Luis Rosell testified as an expert for the respondent. Rosell similarly diagnosed Stoudmire with pedophilia and antisocial personality disorder based on Stoudmire's history. Rosell opined, however, that based on the passage of time since his last offense and based on his participation in treatment, Stoudmire did not currently have serious difficulty controlling his

pedophilic behavior. Rosell also noted that antisocial personality disorder generally remits in the fourth decade of an individual's life. Rosell concluded that Stoudmire did not meet the criteria for commitment as an SVP because Stoudmire did not have a mental abnormality or personality disorder that made him likely to commit sexually violent acts in the future if not confined to a secure facility.

The jury returned a verdict finding that the State had proved beyond a reasonable doubt that Stoudmire was a sexually violent predator, and the trial court entered an order civilly committing Stoudmire to the custody of the Department of Social and Health Services. Stoudmire appeals.

## ANALYSIS

Stoudmire asserts that the State failed to present sufficient evidence to support the jury's verdict finding that he met the definition of an SVP. Specifically, he contends that the State failed to present sufficient evidence that his mental abnormalities or personality disorders made him likely to engage in predatory acts of sexual violence if not confined in a secure facility. We disagree.

We apply the same standard of review to sufficiency challenges to SVP civil commitment determinations as we apply to sufficiency challenges to criminal convictions. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). Under this standard, "We must determine whether the evidence, viewed in a light most favorable to the State, is sufficient to persuade a fair minded rational person that the State has proven beyond a reasonable doubt that [the respondent] is a sexually violent predator." *State v. Hoisington*, 123 Wn. App. 138, 147, 94 P.3d 318 (2004) (citing *Thorell*, 149 Wn.2d at 744). We defer to the trier of fact on conflicting

6

testimony, witness credibility, and the persuasiveness of the evidence. *In re Det. of Sease*, 149 Wn. App. 66, 80, 201 P.3d 1078 (2009).

To civilly commit Stoudmire as an SVP, the State had to prove beyond a reasonable doubt that he met the definition of an SVP under RCW 71.09.020. *In re Det. of Post*, 170 Wn.2d 302, 310, 241 P.3d 1234 (2010). RCW 71.09.020(18) defines a "Sexually violent predator" as

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

This definition contains three elements that the State was required to prove beyond a reasonable doubt in order to civilly commit Stoudmire as an SVP:

> (1) that the respondent "has been convicted of or charged with a crime of sexual violence," (2) that the respondent "suffers from a mental abnormality or personality disorder," and (3) that such abnormality or disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

*Post*, 170 Wn.2d at 310 (quoting RCW 71.09.020(18)). Stoudmire challenges only the sufficiency of evidence in support of the third element—whether his mental abnormality or personality disorder makes him likely to engage in predatory acts of sexual violence if not confined in a secure facility.

As an initial matter, Stoudmire frames this issue as a challenge to the evidence supporting a finding that he had a serious difficulty controlling his behavior, citing *Thorell*, 149 Wn.2d 724. Br. of Appellant at 13-14. In *Thorell*, our Supreme Court addressed whether the United States Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002) (holding that due process requires a lack-of-control determination before a State could civilly commit a sexually violent offender), required the trial court to instruct the jury in an SVP

proceeding to return a specific finding that the respondent had a serious difficulty controlling his or her behavior. 149 Wn.2d at 735-36. The *Thorell* court answered this question in the negative, reasoning that the standard "to commit" jury instruction listing the three elements of an SVP determination adequately required a finding that the respondent had a serious difficulty controlling his or her behavior and, thus, satisfied the due process concerns addressed in *Crane*. 149 Wn.2d at 742-43. Because *Thorell* explicitly held that *Crane* did not require the State to prove any additional elements beyond the three required elements to an SVP determination, we consider this issue as a challenge to the third element (whether Stoudmire's mental abnormality or personality disorder makes him likely to engage in predatory acts of sexual violence if not confined in a secure facility).

Stoudmire acknowledges the evidence at trial that Hoberman had diagnosed him with a mental abnormality of paraphilia, had opined that the abnormality affected Stoudmire's emotional or volitional control, and had concluded that the abnormality predisposed him to commit predatory acts of sexual violence in the future if not confined. But he asserts that Hoberman's testimony was insufficient to support the jury's SVP determination because "[i]n the 25 years since his conviction, ample evidence demonstrates that Mr. Stoudmire has the capacity to manage his behavior." Br. of Appellant at 15.

This argument ignores the scope of our review in assessing the sufficiency of evidence in support of an SVP determination because it asks us to view the evidence in a light most favorable to the respondent, to resolve issues of conflicting testimony and witness credibility, and to evaluate the persuasiveness of evidence. But in reviewing the evidence in support of an SVP determination, we view the evidence in a light most favorable to the State, and we defer to

the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Hoisington*, 123 Wn. App. at 147; *Sease*, 149 Wn. App. 80.

Here, applying the correct standard to our review of Stoudmire's sufficiency challenge, we hold that the State presented ample evidence through Hoberman's expert testimony that Stoudmire had a mental abnormality or personality disorder making him likely to engage in predatory acts of sexual violence if not confined in a secure facility. Accordingly, we affirm the trial court's order civilly committing Stoudmire as an SVP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

Worswick, P.J.

We concur:

_____

Lee, J.

_____

Sutton, J.