IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 32939-9-III |
| | ) | |
| SHAWN D. BOTNER, | ) | UNPUBLISHED OPINION |
| aka SHAWN BOWER. | ) | |
| | ) | |

PENNELL, J. — Shawn Botner appeals an order of commitment based on a jury finding that he was a sexually violent predator (SVP). There are two classes of claimed error: (1) improper admission of expert testimony regarding the Structured Risk Assessment – Forensic Version (SRA-FV) and (2) ineffective assistance of counsel based on failure to object to evidence and to statements made during closing argument. We affirm.

FACTS

Mr. Botner, now age 42, has a long history of both sexual offenses and other crimes. In 2006, Mr. Botner was arrested on a warrant for failure to report his last

address. Following his arrest, the State commenced an SVP civil commitment action. In 2009, a jury found Mr. Botner to be an SVP. He appealed, and this court reversed and remanded for a new trial. *See In re Det. of Botner,* noted at 168 Wn. App. 1017 (2012).

In the new trial, the State presented evidence concerning Mr. Botner's past crimes and psychological assessments done by its expert, Dr. Harry Hoberman. Dr. Hoberman testified that Mr. Botner suffered from sexual sadism which, in his case, was a mental abnormality. He also diagnosed Mr. Botner with (1) pedophilia, (2) other specified paraphilic disorder, nonconsent, (3) antisocial personality disorder, and (4) psychopathy. All diagnoses were made pursuant to the guidelines contained in the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders: DSM-5* (5th ed. 2013).

Dr. Hoberman then testified about his assessment of Mr. Botner's risk of committing a predatory sex offense if released, using four actuarial instruments designed to measure the relative likelihood of future offenses based on factors that have been empirically determined to be associated with future sex offending. Three of the four instruments reflected a similar likelihood of Mr. Botner reoffending, but the Sex Offense Risk Appraisal Guide (SORAG) showed a 100 percent likelihood of reoffense. Dr. Hoberman also utilized the SRA-FV to evaluate Mr. Botner's dynamic risk factors. Mr.

2

Botner's counsel challenged the admissibility of the SRA-FV prior to trial, unsuccessfully arguing it did not satisfy the *Frye*[1] standard.

Based on his evaluation of Mr. Botner and application of the actuarial tests, Dr. Hoberman testified that Mr. Botner's mental abnormalities and personality disorder made him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. The defense called as its expert Dr. Theodore Donaldson, who generally disputed Dr. Hoberman's analysis and conclusions.

In its closing argument, the State told the jurors: "You're not being asked to find any particular diagnosis. You're not being asked to figure out which one [Mr. Botner] might be diagnosed with. That's not your job." 6 Verbatim Report of Proceedings (VRP) at 967. After critiquing Dr. Donaldson's methods, motives, and conclusions, the State told the jury: "That's up to you to decide, but it seems awfully hard to believe when it's clear to anyone who's heard the evidence in this case that there is something seriously wrong with Mr. Botner." 6 VRP at 976. In rebuttal, the State again emphasized the jury did not need to find any particular diagnosis in order to commit Mr. Botner.

The jury found Mr. Botner to be an SVP, resulting in his commitment. Mr. Botner appeals.

---

[1] *Frye v. Unites States*, 54 App. D.C. 46, 293 F. 1013 (1923).

3

ANALYSIS

A. Admissibility of the SRA-FV

The bulk of Mr. Botner's appellate argument focuses on his claim that the

SRA-FV is not sufficiently reliable to meet the standard for admissibility under *Frye*.

Subsequent to the briefing, this division joined Division Two in holding that it is. *In re*

*Det. of Ritter*, 192 Wn. App. 493, ___ P.3d ___ (2016). Based on *Ritter*, we reject Mr.

Botner's challenge to the admission of the SRA-FV testimony in his case.

B. Ineffective Assistance of Counsel

Mr. Botner bases his ineffective assistance of counsel claim on his counsel's

failure to object to the SORAG evidence and to portions of the State's closing argument.

This court reviews claims for ineffective assistance of counsel de novo. *State v. Sutherby*,

165 Wn.2d 870, 883, 204 P.3d 916 (2009). "To prevail on a claim of ineffective

assistance of counsel, counsel's representation must have been deficient, and the deficient

representation must have prejudiced the defendant." *State v. Aho*, 137 Wn.2d 736, 745,

975 P.2d 512 (1999).

Courts are reluctant to find ineffective assistance of counsel except in the most

extreme cases. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). This is

particularly true where, as here, the alleged deficient performance consists of an

4

attorney's failure to object. "The decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). If a claim of ineffective assistance of counsel rests on counsel's failure to object, "a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

1.    *SORAG*

Mr. Botner argues his trial counsel was ineffective in failing to object under ER 403 to the SORAG evidence because of its highly prejudicial nature. We disagree. During the 2009 proceedings, Mr. Botner's counsel unsuccessfully moved in limine to exclude the SORAG evidence as irrelevant. After the 2012 remand and in preparation for the second trial, the parties reviewed the 2009 motions in limine and agreed to substantially abide by the prior rulings on those motions. This was sufficient to preserve the relevance objection for purposes of appeal. *See State v. Powell*, 126 Wn.2d 244, 256-57, 893 P.2d 615 (1995). Knowing that an objection to the SORAG evidence had already been overruled, defense counsel's strategy appears to have been to undercut the significance of the SORAG evidence and to use Dr. Hoberman's reliance on it against

5

him. We are not in a position to re-assess this strategy. Mr. Botner's claim that defense counsel should have raised an ER 403 objection to the testimony as well as a relevance objection must fail.

2.      *Closing Argument*

Mr. Botner contends the following assertions made by the State during its closing were misconduct: (1) "You're not being asked to find any particular diagnosis. You're not trying to figure out which one he might be diagnosed with." 6 VRP at 967, (2) "[I]t's clear to anyone who's heard the evidence in this case that there is something seriously wrong with Mr. Botner." 6 VRP at 976, and (3) "[Y]ou're not required to find any particular paraphilia or any particular named sexual psychosexual pathology. . . ." 6 VRP at 1012-13. The main thrust of Mr. Botner's argument is that the State misrepresented the law and shifted the burden of proof by suggesting the jury could either invent its own mental diagnosis or commit Mr. Botner without finding any mental diagnosis at all.

To show prosecutorial misconduct, a defendant must establish the conduct was both improper and prejudicial. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). However, even if the conduct is improper, it is not grounds for reversal "if [it was] invited or provoked by defense counsel and [is] in reply to his or her acts and statements, unless [the conduct is] not a pertinent reply or [is] so prejudicial that a

6

curative instruction would be ineffective." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). This court reviews the allegedly improper comments in the context of the entire closing argument, the issues presented, the evidence addressed, and the instructions given to the jury. *Id.* at 85-86.

An SVP is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). The element the State must prove beyond a reasonable doubt is whether the person suffers from a mental abnormality or a personality disorder; the jury does not have to decide which specific diagnosis constitutes a legal mental abnormality or personality disorder. *See In re Det. of Sease*, 149 Wn. App. 66, 76-77, 201 P.3d 1078 (2009); *In re Det. of Halgren*, 156 Wn.2d 795, 810-12, 132 P.3d 714 (2006).

Mr. Botner isolates the State's comments, analyzing them singularly rather than contextually. First, the State argued the jury's responsibility was to determine whether Mr. Botner's pathology qualifies as a mental abnormality. In so doing, the State correctly articulated the law, arguing the jury was not required to find any particular mental abnormality or personality disorder; rather, the State just needed to prove Mr. Botner

suffered from a mental abnormality or a personality disorder. The State then qualified its argument by telling the jurors that the doctors' expert testimony was intended to help the jury reach this conclusion before detailing how the evidence supported a finding that Mr. Botner suffered from a mental abnormality.

Second, the State used the comment about something being "seriously wrong with Mr. Botner" in an attempt to discredit Dr. Donaldson's testimony. The State argued that, because Dr. Donaldson was apparently ignoring all the evidence showing Mr. Botner suffered from a mental abnormality or personality disorder, the jurors had to decide what Dr. Donaldson's reasons were for so doing. The State then argued that while deciding Dr. Donaldson's motives was a decision left to the jury, Dr. Donaldson's conclusions "seem[ ] awfully hard to believe when it's clear to anyone who's heard the evidence in this case that there is something seriously wrong with Mr. Botner." 6 VRP at 976.

Third, in its rebuttal, the State reargued many of its points, even using similar language. It noted the jurors had heard "testimony from both doctors to try to help [them] understand how psychology and the law fit together." 6 VRP at 1012. The State then gave a proper interpretation of the jury instruction: the jury was not required to find any particular paraphilia or psychosexual pathology in order to find Mr. Botner suffered from a mental abnormality or a personality disorder. The State went on to reiterate that there

8

had been a lot of testimony presented to help the jury determine whether there was a mental abnormality or a personality disorder before specifically discussing why Mr. Botner was, by definition, a sexual sadist.

Essentially, the State emphasized the testimony of Dr. Hoberman throughout its entire closing argument; by doing so, it is clear the State did not intend for the jury to speculate as to the existence of a mental abnormality or a personality disorder. Because the State's comments were not improper, Mr. Botner's counsel's failure to object was not deficient performance.

But to the extent any portion of the State's closing argument was improper, Mr. Botner has not shown prejudice. The court properly instructed the jury (1) on the elements the State had to prove to establish whether Mr. Botner was an SVP, (2) on the statutory definitions of "mental abnormality" and "personality disorder," and (3) about disregarding any arguments made by the attorneys that were unsupported by the evidence or the law. Juries are presumed to follow the court's instructions. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). The jury was entitled to find Dr. Hoberman's testimony more credible than Dr. Donaldson's. Dr. Hoberman's testimony was strong evidence in favor of the jury's verdict. It cannot be said the result of the trial would have been different had Mr. Botner's counsel objected.

9

No. 32939-9-III
*In re Det. of Botner*

Based on the foregoing, we find no error and affirm. We further exercise our discretion under RCW 10.73.160(1) and RAP 14.2 to not award costs. *State v. Stump*, No. 91531-8, slip op. at 5 (Wash. April 28, 2016) ("[Rule 14.2] gives appellate court judges the discretion to deny costs, even to a prevailing party.")

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                          Lawrence-Berrey, J.

10